BOYCE F. MARTIN, Jr., Circuit Judge.
In this personal bankruptcy case we are called upon to determine the standards for granting exceptions to discharge when a debtor has misrepresented his financial condition to a creditor under the Code, 11 U.S.C. § 523(a)(2)(B). The bankruptcy court granted the exception to discharge. We affirm.
The debtors in this joint bankruptcy case, Bill J. and Brenda K. Martin, filed a personal financial statement with the Bank of *1165 Germantown, Tennessee, on June 15, 1982. The statement listed assets of $247,793 and liabilities of $142,500, for a net worth of $105,293. At the bottom of the statement, just above their signatures, is the following statement:
For the purposes of procuring credit from time to time, I/We furnish the foregoing as a true and accurate statement of my/our financial condition. Authorization is hereby given to the Lender to verify in any manner it deems appropriate any and all items indicated on this statement. The undersigned also agrees to notify the Lender immediately in writing of any significant adverse change in such financial condition.
In early July 1982, the Martins obtained a loan of $2500 from the Bank. This loan was secured by the Martins’ bank account and was subsequently satisfied.
On December 30,1982, the Bank lent Bill J. Martin $2500 on a second note. This is the loan now in question; it was unsecured and carried a floating interest rate two percent above the prime rate. The note stated, “The Undersigned will pay on demand all costs of collection and attorneys’ fees, incurred or paid by Bank in enforcing this note.”
Martin told the loan officer that he had lost his job, but made no attempt otherwise to correct the June financial statement. The Bank’s loan officer testified that he asked Martin if the financial statement was correct and got a positive response. Martin testified that the loan officer did not ask him if anything had changed and the financial statement never came up in their conversation. Martin further testified he expected the loan to be secured by their bank account, as was the first loan.
On March 13, 1983, the Martins filed a joint petition for voluntary bankruptcy under chapter seven. On the attached schedules to the petition they listed approximately $24,000 in assets and $71,000 in liabilities. The Bank was listed as an unsecured creditor in the undisputed amount of $2630.
The Bank timely filed this adversary proceeding to have its debt determined to be excepted from discharge under 11 U.S.C. § 523(a)(2)(B). The Bank also asked for punitive damages and attorney’s fees, and the Martins in turn asked for attorney’s fees under 11 U.S.C. § 523(d).
The bankruptcy court held that the Bank had met all four elements of section 523(a)(2)(B) by clear and convincing proof. The court found that the financial statement was “replete with materially false statements”; that the Bank would not have made the loan, had it known the truth; that the Bank’s reliance on the financial statement was reasonable; and that Martin’s intent to deceive should be inferred from the statement’s material falsity. The court granted the exception from discharge. However, it applied former Bankruptcy Rule 754 and, applying its equitable discretion, refused to tax either party with costs. The district court affirmed the bankruptcy court’s holdings on both counts as not clearly erroneous, and both parties appealed.
The party seeking an exception from discharge under section 523(a)(2) has the burden of proof by clear and convincing evidence. E.g., In re Forester, 28 Bankr. 249, 250-51 (Bankr.W.D.Mo.1983); In re Jones, 3 Bankr. 410, 412 (Bankr.W.D.Va. 1980). In the period from December 24, 1982, the effective date of the judgment in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), to August 1, 1983, the effective date of the new Bankruptcy Rules, the bankruptcy court’s findings were reviewable de novo by the district court. White Motor Corp. v. Citibank, 704 F.2d 254, 263, 267 app. (6th Cir. 1983). The new rules, however, accord the findings of a bankruptcy judge the same deference given the findings of a district judge: “Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.” Bankruptcy Rule 8013. The new rules supersede the interim rule discussed in White Motor, at least *1166 where jurisdiction is not affected. In re Morrissey, 717 F.2d 100, 104-05 (3d Cir. 1983).
The new Bankruptcy Rules are applicable to pending cases “except to the extent that in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice.” Order of the Supreme Court, 461 U.S. 975 (Apr. 25, 1983) (prescribing rules). Although the bankruptcy court decision was rendered before the new rules took effect, and the district court decision afterwards, we see no reason not to apply a “clearly erroneous” standard to this case. This case deals only with dischargeability, a traditional bankruptcy issue, rather than with “peripheral, non-traditional bankruptcy issues,” White Motor, 704 F.2d at 263, so the Fourth Circuit’s holding that the “clearly erroneous” standard cannot constitutionally be applied to peripheral issues has no bearing here. See 1616 Reminc Ltd. Partnership v. Atchison & Keller Co., 704 F.2d 1313, 1318 (4th Cir.1983). We see no injustice in this application.
Although the debtor has enumerated ten different questions presented on appeal, most of these are simply whether specific findings of the bankruptcy court were clearly erroneous. The statute at issue, 11 U.S.C. § 523, reads in relevant part:
§ 523. Exceptions to discharge
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by
(B use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor’s or an insider’s financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive.
There can be no doubt here that the financial statement furnished the Bank was materially false and that it was in respect to the debtor’s financial condition. It is only the third and fourth elements that are in question.
The Bank clearly placed at least partial reliance on the Martins’ asserted net worth of more than $100,000 in making the December 1982 loan of $2500. The bankruptcy court made an unchallenged finding that the Bank would not have made the loan if it had known the truth. The debtor argues, however, that the Bank’s reliance was unreasonable because the Bank did not adequately investigate his financial condition.
The reasonableness requirement was intended to incorporate prior case law into the current Bankruptcy Act. S.Rep. No. 989, 95th Cong., 2d Sess. 78, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5864; H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6320. As such, it cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith. See In re Garman, 643 F.2d 1252, 1256 (7th Cir.1980) (holding that reasonableness is circumstantial evidence of actual reliance), cert. denied, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Congress was, however, concerned that creditors use, when feasible, “other sources of information, such as credit bureau reports, to verify the accuracy of the list of debts.” H.R.Rep. No. 595, supra, at 130, reprinted in 1978 U.S.Code Cong. & Ad.News at 6091.
Initially the Bankruptcy Court should make its determination of reasonableness considering all the facts and circumstances of the case, including the size of the loan. Here the loan was small, especially when compared to the purported net worth of $100,000; the Bank had prior *1167 business dealings with the Martins, leading them to believe them reliable; and the Bank did in fact obtain a credit report. We cannot say on these facts alone that the Bank unreasonably failed to make an adequate investigation of the Martins’ financial condition.
The Martins make a further defense against the denial of discharge by arguing that they did not make or publish the financial statement with intent to deceive the Bank. The standard, however, is that if the debtor either intended to deceive the Bank or acted with gross recklessness, full discharge will be denied. See In re Matera, 592 F.2d 378, 380 (7th Cir.1979) (per curiam); In re Houtman, 568 F.2d 651, 655-56 (9th Cir.1978). That is, the debtor must have been under some duty to provide the creditor with his financial statement; but full discharge may be disallowed if the debtor either intended the statement to be false, or the statement was grossly reckless as to its truth.
The bankruptcy court found that the financial statement was materially false when first submitted to the Bank on June 15, 1982, and continued to be false at the time of the second loan, December 30,1982. In his opinion the Bankruptcy Judge stated:
For example, the Debtors’ asserted ownership interest in certain real properties was materially false and Mr. Martin knew it was false at the relevant times; Debtors’ ratio of assets to liabilities on June 15 and December 30, 1982, was allegedly 2x1; however, on March 13, 1983, the ratio of liabilities to assets was in reality 3x1 (and no sufficient explanation was given to the Bank on December 30, 1982, to satisfy this staggering discrepancy).
Slip op. at 6 (emphasis original). The court inferred that Mr. Martin knew the statement was false or was grossly reckless as to its truth or falsity. It therefore concluded that he had the requisite intent to deceive.
It is argued that Martin did not have any intent to deceive the Bank in connection with this loan, because he anticipated that the second loan would be secured by the Martins’ bank account, like the first loan. The bankruptcy court made no finding as to the debtor’s state of mind in December 1982. It relied in part on the obligation in the financial statement “to notify the Lender immediately in writing of any significant adverse change in such financial condition.”
It is true that such boilerplate language did not in itself create Martin’s obligation to speak the truth. Indeed, had the financial statement initially been accurate, and the Martins’ financial condition deteriorated prior to the second loan, the debtor would be eligible for discharge of this debt unless he falsely reaffirmed the statement. But in this case, the statement was intentionally false from the very beginning. Mr. Martin intentionally communicated the false statement to the Bank with the expectation that the Bank would rely on it, and he cannot now be heard to say that he did not intend the Bank to continue this reliance. It is for this reason that it does'not matter whether he reaffirmed the statement’s accuracy in December 1982.
The Bank also seeks attorney’s fees and costs of these proceedings. The Bankruptcy Act explicitly grants fees and costs to prevailing debtors:
(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney’s fee for, the proceeding to determine dis-chargeability, unless such granting of judgment would be clearly inequitable.
11 U.S.C. § 523(d); see In re Carmen, 723 F.2d 16 (6th Cir.1983).
The congressional failure to award attorney’s fees to prevailing creditors was not accidental. Congress enacted section 523(d) out of concern that creditors were *1168 using the threat of litigation to induce consumer debtors to settle for reduced sums, even though the debtors were in many cases entitled to discharge.
The bill does not award the creditor attorney’s fees if the creditor prevails. Though such a balance might seem fair at first blush, such a provision would restore the balance back in favor of the creditor by inducing debtors to settle no matter what the merits of their cases. In addition, the creditor is generally better able to bear the costs of the litigation than a bankrupt debtor, and it is likely that a creditor’s attorney’s fees would be substantially higher than a debtor’s, putting an additional disincentive on the debtor to litigate.
H.R.Rep. No. 595, supra p. 1166, at 131, reprinted in 1978 U.S.Code Cong. & Ad.News at 6092.
However, creditors are entitled to recover attorney’s fees in bankruptcy claims if they have a contractual right to them valid under state law, which appears to be the case here, as the note itself provided that the Martins would reimburse the Bank for the costs and attorney’s fees necessary to collect the note. Security Mortgage Co. v. Powers, 278 U.S. 149, 153-54, 49 S.Ct. 84, 85-6, 73 L.Ed. 236 (1928); In re Bain, 527 F.2d 681, 685 (6th Cir.1975). The validity of the creditor’s claim for attorney’s fees does not depend on whether the obligation is secured (unless state law so provides). In re United Merchants & Manufacturers, 674 F.2d 134, 137 (2d Cir.1982). Tennessee state law enforces such contractual obligations for reasonable attorney’s fees. See, e.g., Coble Systems v. Gifford Co., 627 S.W.2d 359, 364 (Tenn.Ct.App.1981).
The bankruptcy court disallowed costs to the Bank pursuant to its discretionary power to award costs under former Bankruptcy Rule 754(b). However, a contractual right to attorney’s fees is part of the debt to the creditor and is not dependent on an award of costs, so Rule 754 had no application here. See Bain, 527 F.2d at 685. The Bank was entitled to reasonable attorney’s fees for collection of the note unless the passage of section 523(d) was intended to deprive the Bank of that right.
We do not think that section 523(d) prevents the award of attorney’s fees and costs to creditors so entitled as a matter of contract under state law. There is simply no hint of that intention in the text of the statute. To the contrary, 11 U.S.C. § 523(a)(2)(B) excepts from discharge the whole of any debt incurred by use of a fraudulent financial statement, and such a debt includes state-approved contractually required attorney’s fees.
Contrary to the Martins’ argument, our holding does not undercut congressional intention. Section 523(d) still gives prevailing debtors in an adversary proceeding a right to attorney’s fees, where they had none before. Prevailing creditors still have no statutory right to attorney’s fees, and if they have a contractual right, it must be assumed they gave value for that right at the time credit was advanced. See United Merchants, 674 F.2d at 137. Debtors are also given additional protection against making unfavorable settlements by the provisions of 11 U.S.C. § 524(c)-(d). See S.Rep. No. 989, supra p. 1166, at 366, reprinted in 1978 U.S.Code Cong. & Ad.News at 6322.
The case is affirmed in part, reversed in part, and remanded for an award of costs and attorney’s fees to the Bank pursuant to the terms of the note. Costs on appeal are awarded to the Bank.