In re Alan WEINER, Debtor.

SYRACUSE SAVINGS BANK, Plaintiff,

v.

Alan WEINER, Defendant.

Bankruptcy No. B87–01440.
Adv. No. B87–0228.

United States Bankruptcy Court,
N.D. Ohio, E.D.

June 8, 1988.

David R. Mayo, Cleveland, Ohio, for plaintiff.

Thomas Pavlik, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND DECISION

WILLIAM J. O'NEILL, Bankruptcy Judge.

This proceeding came before the Court on the complaint of Syracuse Savings Bank (Syracuse) to determine dischargeability of debt under Section 523(a)(2)(B) of the United States Bankruptcy Code and the answer of Alan Weiner (Debtor). Determination of dischargeability of debts is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28. At the trial Defendant's motion for directed verdict was denied. Relevant facts are as follows:

Debtor is a podiatrist who filed a petition under Chapter 11 of the Bankruptcy Code on April 28, 1987. The case was converted to Chapter 7 by order of October 20, 1987.

On August 15, 1985, Debtor executed a note in favor of American Funding Ltd. in the principal amount of $98,201.25. (STIPULATION TR. 3–5). The note was subsequently purchased by Syracuse on September 11, 1985. (TR. 50, 62). On February 11, 1987, Syracuse obtained default judgment on the note for $95,204.33, with interest at 12.9% per annum plus court costs. (STIPULATION TR. 3–5). It is this judgment against Debtor which Syracuse maintains is non-dischargeable.

American Funding served as originator of loans taken for investment in tax shelters. Debtor executed the August 15, 1985 note to American Funding for this purpose. (TR. 110). To obtain the loan, he signed a personal financial statement and loan application. (EXH. 27, 26; STIPULATION TR. 3–5). These documents were signed and submitted in blank to Churchill Investments, a broker on the purchase. (TR. 113, 115, 131). It is unclear who actually completed the forms, but it appears some of the information was obtained from correspondence between Debtor, his accountant and Debtor's stepsister, a financial planner

who initiated the deal, and from various brokers involved in the purchase. (TR. 130, 147–151).

Syracuse bought the August 15, 1985 note for face value from Putnam Funding Corp. (EXH. A; TR. 77). Prior to this purchase, the note changed hands five times. (EXH. A; TR. 64–65). Syracuse never dealt with Debtor on the note purchase and extended no funds to him. (TR. 64, 137). The two had no ongoing business relationship. In conjunction with its purchase Syracuse received the loan note, loan application, financial statement, a 1983 tax return, the assignment, disbursement instructions and a credit report. (TR. 45–49, 77). The transaction was one of approximately 20 such note purchases from Putnam totaling $1,439,508.75. (EXH. B; TR. 77). Prior to purchasing these notes, Syracuse examined the paper work for approximately one and one-half days. (TR. 77).

The documents Syracuse received were subjected to various underwriting criteria for conformity and accuracy. (TR. 44–46). Primary consideration of the financial statement and loan application was determination of income to support the debt level. (TR. 44). In addition, Syracuse was concerned with Debtor's credit history and net worth. (TR. 44–46). The principal documents relied upon for these determinations were the financial statement, loan application and the tax return. (TR. 44, 49). Although the underwriting criteria were not thoroughly explained at trial, the bank manager testified that the note purchase would not have been made if Syracuse were aware of certain pending litigation and tax liabilities, because repayment would then have been doubtful. (TR. 52–53). Further, he testified the loan would not have been made if Debtor's liabilities exceeded assets by more than a 2:1.5 ratio. (TR. 101–102).

Debtor's loan application (EXH. 26) and financial statement (EXH. 27) request detailed information of his personal finances. Although the applicant attests to accuracy and completeness, both documents are obviously incomplete and contain numerous

omissions and inconsistencies. The forms admonish applicant to fill in each blank, requesting "no" and "none" where applicable, still many questions remain unanswered. In addition, Debtor's first name is misspelled in the financial statement. Moreover, the documents are inconsistent. The application reflects a $400,000 annual salary and interest income of $50,000. No assets to support interest income, however, are indicated. The financial statement sets forth annual income of $500,000 and no other source of income. These figures represent a $100,000 discrepancy in annual income and a $50,000 differential in total income. Although unsecured debt of $27,000 appears in the financial statement, none is in the application. A $20,000 tax liability in the financial statement is not in the application. Finally, the documents vary in valuation of Debtor's assets. In the application assets include $15,000 cash on hand and a business valued at $750,000. Financial statement assets disclose $12,000 cash on hand and the business valued at $650,000. On the face of these documents is a $100,000 discrepancy in valuation of the business and a larger inconsistency in the value of total assets.

In deciding to make the purchase in question, Syracuse also considered a credit report and a 1983 income tax statement. The credit report was relied on to verify Debtor's listing $27,000 in unsecured debt. (TR. 91). According to the tax return, Debtor's gross income in 1983 was $231,296.47. (EXH. 2).

Regarding Debtor's financial condition, the loan application and financial statement were inaccurate. Although both forms specifically request information on pending litigation, (EXH. 26, page 2; EXH. 27, page 1), none is provided. When these documents were submitted, twelve law suits were pending against Defendant. (EXH. 4–16). Ten of these actions were malpractice claims requesting damages exceeding $660,000. (EXH. 4–14). Two of these suits sought judgment for default on notes and for guarantee of corporate debt totaling in excess of $46,000. (EXH. 15–16). Debtor's attempts to minimize the actual liability of these actions is not persuasive. Omission of this potential liability rendered the statements inaccurate and false.

Syracuse further asserts inaccuracies in Debtor's tax liability and his obligation of a certain real estate debt. There is no evidence to establish the latter. The documents when submitted do contain inaccuracies in Debtor's taxes; a $22,000 withholding tax liability is omitted from the loan application and appears as $20,000 in the financial statement. (TR. 30, 34, 38, 110; EXH. 25). Additionally, the documents fail to disclose Debtor's non-payment of 1984 and 1985 quarterly taxes prior to the documents being submitted. (TR. 120, 146; EXH. 20, 21). Debtor was under continuous audit since at least 1980. (TR. 121; EXH. 20, 21). The Internal Revenue Service filed a $9,364,778.58 tax claim which includes substantial sums for the period preceding submission of the documents. Evidence fails to establish the extent of the omitted tax liability. The return relating to 1984 taxes was not filed prior to completion of the financial statement and loan application. (EXH. 21). The return relating to 1985 taxes was not filed until the following year. (EXH. 20). Also, while the I.R.S. claim sets forth substantial liability, it is estimated. (EXH. 18). Further, Debtor testified the purchase of these tax shelters was intended to shelter 1984 and 1985 income. (TR. 121, 145). Therefore, while evidence suggests omission of taxes from the documents, the magnitude of that omission is uncertain.

DECISION:

Section 523(a)(2)(B) provides for non-dischargeability of a debt:

"(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ...

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...”

11 U.S.C. § 523(a)(2)(B)

A party seeking exception to discharge under this section has the burden of proof by clear and convincing evidence. *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986); *Martin v. Bank of Germantown,* 761 F.2d 1163 (6th Cir.1985).

Unquestionably, Syracuse is owed a debt represented by judgment, and the loan application and financial statement are statements in writing respecting the Debtor's financial condition. Section 523(a)(2)(B)(ii). Material falsity of these statements, whether debtor caused them to be made with intent to deceive and the bank's reasonable reliance thereon, are in issue. Section 523(a)(2)(B)(i), (iii), (iv). Debtor also challenges Syracuse's standing to maintain this action since he presented no statements to Syracuse and the bank provided no funds to him. The concern of this latter issue is whether Debtor made the statements with intent to deceive and will be discussed accordingly.

■ The documents in question are clearly materially false. Material falsity has been defined as an important or substantial untruth, revelation of which would have precluded the extension of money. *In re Bogstad,* 779 F.2d 370 (7th Cir.1985). Omission of liability can constitute material falsity. *Knoxville Teacher's Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986). Omission of Debtor's contingent liability for malpractice and other claims was a substantial untruth which would have precluded the extension of money.

■ It is equally clear Debtor caused these statements to be made with intent to deceive. The standard in this regard is that discharge will be denied if Debtor intended to deceive or acted with gross recklessness concerning the truth of statements respecting his financial condition. *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986); *Martin v. Bank of Germantown,* 761 F.2d 1163 (6th Cir.1985). Signing financial statements in blank can constitute reckless disregard.

*Massey–Ferguson Credit Corp. v. Archer,* 55 B.R. 174 (Bankr.M.D.Ga.1985); cf. *In re Coughlin,* 27 B.R. 632 (Bankr. 1st Cir. 1983). By submitting the forms in blank without concern or knowledge of their content on completion, Debtor, an educated businessman, acted with gross recklessness regarding their eventual veracity. An intent to deceive is, therefore, established.

■ Debtor's challenge of Syracuse's standing because he did not personally present the statements to the bank to obtain a loan is irrelevant. It is sufficient that he signed the statements in reckless disregard of their ultimate content and Syracuse received them indirectly and relied thereon. *Century First National Bank of Pinellas County v. Holwerda,* 29 B.R. 486 (Bankr.M.D.Fla.1983), see also 3 Collier on Bankruptcy, ¶ 523.09[5a] (15th ed. 1988). Debtor caused the statements to be made and Syracuse has standing to pursue this action.

■ Although Syracuse relied on the loan application and financial statement in purchasing the note, the pivotal issue is whether reliance was reasonable. The reasonableness requirement incorporates prior case law and is directed at creditors acting in bad faith. To determine if reliance was reasonable, all facts and circumstances of the case must be considered. *Martin v. Bank of Germantown,* 761 F.2d 1163 (6th Cir.1985). Determining reasonableness does not require subjective evaluation and judgment of a creditor's lending policy and practice. It does however, necessitate determining whether claimed reliance was so unreasonable as to be no reliance at all. *First National Bank of Lansing v. Kreps,* 700 F.2d 372 (7th Cir.1983); *Northern Trust Co. v. Garman,* 625 F.2d 755, republished at 643 F.2d 1252 (7th Cir.1980), cert. denied, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). Stringency of the reasonableness standard varies with the lender's sophistication. *Coman v. Phillips,* 804 F.2d 930 (6th Cir.1986). A facially erroneous statement or one containing obvious inadequate information cannot sustain a determination of reasonableness.

*Beneficial Finance Co. v. Jackson,* 32 B.R. 549 (Bankr.E.D.Va.1983); *First Security Bank of Fox Valley v. Ardelean,* 28 B.R. 299 (Bankr.E.D.Ill.1983); *Waterbury Community Federal Credit Union v. Magnusson,* 14 B.R. 662 (Bankr.N.D.N.Y.1981). Also relevant to determine reasonableness is sufficiency of creditor's investigation of the debtor's actual financial condition. *Martin,* 761 F.2d 1163. Size of the debt and existence and nature of prior business dealings are relevant to determine adequacy of creditor's efforts to verify Debtor's finances. *Martin,* 761 F.2d 1163; *High Springs Bank v. Sandlin,* 39 B.R. 936 (Bankr.M.D.Fla.1984).

The financial statement and loan application in question are patently inadequate and incomplete. This fact combined with the following inconsistencies in the information provided render Syracuse's reliance on the statement and application unreasonable; different spellings of Debtor's name, substantial discrepancy in annual salary and total income, no assets listed to support asserted interest income and a significant variance in total valuation of assets. Further, discrepancies exist in stated liabilities. Despite Syracuse's contention that these inconsistencies did not substantially affect their decision under the underwriting criteria, they were sufficiently substantial to place the bank on notice that reliance on the documents was inappropriate and dubious at best. Syracuse negotiated a sizeable purchase and depended upon finances of an unknown entity. There was no prior relationship to justify reliance on the questionable documents. In addition, Syracuse's reference to the 1983 tax return failed to support annual salaries in the documents. Debtor's 1983 annual salary was less than one-half the low annual salary on the loan application. While reference to the credit report may have confirmed the unsecured debt appearing only in the financial statement, this confirmation was insufficient to justify reliance on the documents. Based on the facts and circumstances herein, Syracuse's reliance on the loan application and financial statement was flagrantly unreasonable.

CONCLUSION OF LAW:

Under the circumstances as presented, Plaintiff's reliance on the financial statement and loan application was not reasonable. Since the evidence fails to satisfy all required elements, Plaintiff's judgment against Debtor is not a debt within the parameters of non-dischargeability set forth in Section 523(a)(2)(B) of the Bankruptcy Code.