In re James Thomas HODGES, Debtor.

**JARESS TRUCK CENTERS, INC., Plaintiff,**

v.

**James Thomas HODGES, Defendant.**

**Bankruptcy No. 1–89–01997.
Adv. No. 89–0289.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 11, 1990.

L. Mari Taoka, Toledo, Ohio, for debtor.

Johna Bella, Toledo, Ohio, for plaintiff.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on for trial upon plaintiff's complaint to determine dischargeability of debt. Upon consideration of the evidence adduced at the hearing and the oral arguments of the parties, the court finds that the debt due plaintiff should be excepted from discharge.

## FACTS

On July 18, 1989, Debtor/defendant filed his voluntary chapter 7 petition. Prior thereto, on October 24, 1984, plaintiff and Debtor entered into a retail installment contract allowing Debtor to purchase two tractors from plaintiff, financed by Volvo White Truck Credit. Plaintiff's Exhibit 1. Before entering into this contractual arrangement, Debtor, in October, 1984 and in response to plaintiff's request, submitted a financial statement prepared for Mid–American National Bank, dated July 10, 1984. Plaintiff's Exhibit 2. The contract executed by the parties herein allowed Volvo to seek payment from plaintiff in the event of Debtor's default. Debtor defaulted under the terms of that financial arrangement, failing to make any payments thereunder. Plaintiff was, then, liable for the outstanding balance and seeks to except this debt from discharge for the reason that Debtor's financial statement reflects a materially false written statement, respecting Debtor's financial condition which Debtor published with intent to deceive, upon which plaintiff reasonably relied.

Debtor testified that the Toledo Millwrights Inc. stock, listed as an asset on the financial statement valued at $185,000, has never been owned by him; rather, it is held solely by his wife. Plaintiff's Exhibit 1 at 1. Additionally, Debtor's financial statement reflects that two pieces of real estate were titled in his and his wife's name, to-wit: 2212 Orchard, Toledo and 228 Graham, Toledo. *Id.* at 2. In fact, both these parcels have never been titled in Debtor's name; rather, he is liable under the mortgages on these properties and holds only a dower interest in these parcels.

Sally Balch, president of plaintiff, testified that she had conversations with Debtor over a period of six months, early in 1984, regarding Debtor's interest in getting into the truck business. Her impression of Debtor was that he was "professional", attempting to gain as much knowledge about the business as possible. After these conversations, plaintiff rented a tractor to Debtor on a short term basis, about one or two months. Debtor met the obligations under that short term lease.

Thereafter, Ms. Balch stated that Debtor approached her regarding the purchase of two tractors. Plaintiff's standard operating procedure at that juncture was to inquire of a customer regarding the financial ability to purchase the trucks. Additionally, plaintiff, in this case, indicated that Volvo provided financing for such purchases. Ms. Balch stated that she requested Debtor to complete a credit application or provide other documentation reflecting his financial status. Debtor provided Ms. Balch with the financial statement in issue. Although Debtor recollected that he did complete a credit application, no other documents were introduced at trial.

Upon receipt of the financial statement, Ms. Balch reviewed it to determine if Debtor appeared eligible for credit, that is whether Debtor appeared to possess substantial assets for payment of the tractors. Ms. Balch, having determined that Debtor appeared to qualify, then forwarded the statement to Volvo. Debtor, at no time, indicated that his financial condition was other than that set forth on the financial statement. Volvo contacted Ms. Balch indicating that it would extend credit to Debtor. At that juncture, although standard terms include 15% down payment, Debtor was unable to provide this amount. At his request according to Ms. Balch, she inquired of Volvo if financing of 100% would be available to Debtor. Volvo approved this credit arrangement and the contract was entered into by the parties. Plaintiff's Exhibit 1. After Debtor's default and repossession of the trucks used as collateral, plaintiff became aware that Debtor's financial condition was other than that reflected in the statement.

It is undisputed that errors exist in the financial statement; however, Debtor claims that plaintiff could not have reasonably relied upon the financial statement for the reasons that the statement was prepared for another financial institution, that the statement was four months old and that plaintiff failed to verify or investigate any of the representations therein. Pretrial Brief of Defendant at 4–5. The parties requested that this court determine the dischargeability issue only; the amount, if held dischargeable, will be determined in the state court action, previously instituted after Debtor's default.

## DISCUSSION

Plaintiff's complaint is governed by 11 U.S.C. § 523(a)(2)(B) which provides that a discharge does not discharge any debt—

(2) for money, property ... to the extent obtained by—

(B) use of statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

As admitted by defendant's counsel, plaintiff has the burden of proving its case by clear and convincing evidence. *In re Martin,* 761 F.2d 1163 (6th Cir.1985) (citations omitted). This standard is

an intermediate standard of proof in which the evidence establishes a fact to a lesser degree than beyond a reasonable doubt, but establishes a fact to a greater degree than by a mere preponderance of the evidence. In other words, clear and convincing evidence consists of evidence which establishes in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established." *Matter of Hagedorn*, 25 B.R. 666, 668 (Bkrtcy.S.D.Ohio 1982) (citing *Hobson v. Eaton*, 399 F.2d 781, 784 n. 2 (6th Cir.1968) *cert. denied*, 394 U.S. 928, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969)). Thus, in order for plaintiff to prevail on its complaint, it must establish that:

(1) debtor made a materially false representation in writing;

(2) the false writing concerned the debtor's financial condition;

(3) the creditor relied on the representation in extending credit and the creditor's reliance on the representation was reasonable;

(4) the representation was made with the intent to deceive.

*In re Kolbfleisch*, 97 B.R. 351, 353 (Bkrtcy. N.D.Ohio 1989) (citation omitted).

 Debtor's overstatement of his income or understatement of his liabilities could render an application materially false for purposes of construing the statutory exception to discharge. *In re Greene*, 85 B.R. 747, 750, 17 B.C.D. 759 (Bkrtcy.N.D. Ohio 1988) (citation omitted). Such is the case here. Debtor listed assets, specifically Toledo Millwrights, Inc. stock and two pieces of real estate, of which he was not an owner. The financial statement in issue, then, represents a materially false writing. It is undisputed that the financial statement represents a statement in writing respecting the Debtor's financial condition.

 In issue, however, is whether plaintiff reasonably relied on the statement. In determining what constitutes reasonable reliance, the court must consider all the facts and circumstances surrounding the transaction. *Martin*, 761 F.2d at 1166.

It is well established that reasonable reliance is that degree of care which would be exercised in an average business transaction by parties under similar circumstances. This standard imposes a duty on the creditor to make a reasonable inquiry as to the veracity of the information provided by the Debtor. *In re Kleinoeder*, 56 B.R. 77, 78 (Bktcy.N. D.Ohio 1985) (citation omitted). Furthermore, this element is "directed at creditors acting in bad faith." *Martin*, 761 F.2d at 1166; *In re Weiner*, 86 B.R. 912, 915 (Bkrtcy.N.D.Ohio 1988). That is, the court must determine "whether [the] claimed reliance was so unreasonable as to be no reliance at all." *Weiner*, 86 B.R. at 915 (citations omitted). Lastly, the "stringency of the reasonableness standard varies with the lender's sophistication." *Id.* (citing *Coman v. Phillips*, 804 F.2d 930 (6th Cir. 1986)).

In the instant case, plaintiff is not a lending institution; rather, it assists purchasers by forwarding information to lending institutions for credit approval. In order to accommodate Debtor's request to purchase two tractors, plaintiff submitted the financial statement in issue to Volvo after its initial review, determining the availability of sufficient assets. That is, Ms. Balch reviewed the financial statement submitted by Debtor, which reflected a net worth of $610,820. Plaintiff's Exhibit 2 at 1. The loan here of $157,277.32 when compared to Debtor's purported net worth did not appear excessive. *See Martin*, 761 F.2d at 1166 and Plaintiff's Exhibit 1. *See also Weiner*, 86 B.R. at 916. Ms. Balch then forwarded the financial statement to Volvo credit which extended credit to Debtor. Because plaintiff is not in the business of extending credit, "cases involving commercial lenders are inapposite to this situation." *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986).

 Additionally, the course of dealings between the parties is relevant in determining plaintiff's reasonableness. *Weiner*, 86 B.R. at 916. Here, although the parties prior dealings included only a two month

lease, Debtor made his payments in accordance with the lease provisions. Furthermore, Ms. Balch testified that she thought Debtor appeared "professional." Based upon these favorable dealings, partial reliance on the false statement is reasonable. *See In re Icsman,* 64 B.R. 58 (Bkrtcy.N.C. Ohio 1986). Considering all the circumstances attendant the parties' agreement, the court finds that plaintiff has carried its burden of proof, establishing by clear and convincing evidence, that plaintiff reasonably relied upon the financial statement submitted by Debtor.

■ The final element necessary for plaintiff's successful prosecution of its complaint is establishing Debtor's intent to deceive. This standard necessitates that plaintiff prove that Debtor "intended to deceive or acted with gross recklessness." *Martin,* 761 F.2d at 1167. That is, Debtor must have been under some duty to provide creditor with a financial statement. *Id.* In the instant case, Debtor submitted the financial statement in issue to plaintiff in response to its request for a credit application or other financial document, in order for plaintiff to determine Debtor's eligibility for purchasing two tractors. Not only was Debtor under an obligation to submit a financial document, he also knew that the document would be used in evaluating his eligibility for a loan to purchase the desired tractors. Debtor knew that the financial statement inaccurately reflected assets that he did not own and, therefore, this court finds the requisite intent to deceive exists, or, minimally, that Debtor acted with gross recklessness by not informing plaintiff that his wife owned certain assets in her name alone. *See Martin,* 761 F.2d at 1167; *Knoxville Teachers Credit Union v. Parkey,* 790 F.2d 490 (6th Cir.1986).

Furthermore, Debtor testified that he has been involved in several businesses. As a businessman, he was, or should have been, aware disclosure of accurate information was necessary in order to obtain credit. *Icsman,* 64 B.R. at 64. Debtor submitted this statement with the expectation that Volvo would extend credit, allowing him to purchase the tractors. Plaintiff's

liability on the recourse loan and Debtor's intent to deceive evidenced by the financial statement provided plaintiff and upon which plaintiff reasonably relied, permit judgment on plaintiff's complaint, excepting the debt from discharge. *See Knoxville Teachers,* 790 F.2d at 492. *See also Kolbfleisch,* 97 B.R. at 354 (while it is true that Debtor's representations were made to Vintage which in turn transmitted it to plaintiff, Debtor knew the purpose for which the information was elicited was to arrange financing; Debtor may not be shielded from liability simply because her statements were transmitted through an intermediary). In light of the foregoing, it is therefore

ORDERED that Debtor/defendant's debt owed to plaintiff be, and it hereby is, excepted from discharge.