In re Frank **RODRIGUEZ,** Carmen A. **Rodriguez,** Debtors.

PNC BANK, N.A., **Plaintiff,**

v.

Frank **RODRIGUEZ,** Carmen A. **Rodriguez,** Defendants.

Bankruptcy No. 94–20208 TMT. Adv. No. 94–2190.

United States Bankruptcy Court, E.D. Pennsylvania, Reading.

Aug. 2, 1995.

---

Donna M. Donaher, Pittsburgh, PA, for plaintiff.

Robert David Bacher, Lancaster, PA, for debtors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matter before the court is an adversary action to determine the dischargeability of debt under 11 U.S.C. § 523(a)(2)(B). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

The action arises from a home improvement loan Debtors obtained from PNC Bank, N.A. (PNC), in July, 1993. PNC approved the loan based upon a credit application which was submitted on July 21, 1993, by Debtors through Jerico Builders, Inc. (Jerico), a home improvement company. It is undisputed that the majority of the information contained on the credit application (Plaintiff's Exhibit 1) is true and correct. It is also undisputed that the application materially misstates the annual income of Debtor Frank Rodriguez and the nature of his employment. The document indicates that Mr. Rodriguez was employed as an officer of the Bank of Lancaster with an annual income of $39,000.00 as of July 1993. Debtors admit that Mr. Rodriguez was not an officer of the bank but rather was a senior adjuster and that his income was approximately $20,-000.00. Debtors' combined annual income was reported on the application to be $51,-000.00 ($39,000 for Mr. Rodriguez and $1,000 per month for Mrs. Rodriguez) when, in fact, their actual adjusted gross income per their 1993 federal income tax return was $38,735. *See* Plaintiff's Exhibit 3.[1] Debtors contend that they are not responsible for the inaccu-

racy of the information on the application because they signed the document in blank. Debtors further assert that they provided true and correct information concerning their annual income to the representative of Jerico who interviewed them for the purpose of assisting them with the credit application.

Testimony at trial established that sometime in early July of 1993 a canvasser for Jerico, going door-to-door, approached Mrs. Rodriguez and asked whether she was interested in home improvements. She indicated that she was willing to talk with Jerico at a time when her husband could also be present.

Subsequently, Larry Boyd, a Jerico representative, called Debtors, made an appointment, came to visit them, demonstrated replacement windows and displayed floor tile samples. Debtors decided that they were interested in making home improvements and, as a result, Mr. Boyd returned to their home and obtained from them certain personal information, including the nature of their respective employments and their incomes. Debtors aver that, although Mr. Boyd had with him a blank loan application form like Exhibit 1, he told Debtors that he had other appointments, but no other forms, and asked them to sign the form in blank. According to Debtors, they signed the form in blank.[2] According to a witness from Jerico, Hal Paul, Vice President and General Manager of Jerico, the form was not signed in blank; rather the following events occurred:

Larry Boyd contacted Mr. Paul by telephone to provide him with Debtors' credit information. In turn, Mr. Paul completed the credit application form. *See* Plaintiff's Exhibit 1. Mr. Paul testified that after he filled in the form and some other documents, he returned to Debtors' house with the form and the documents and reviewed the information contained therein with Debtors. On July 21, 1993, according to Mr. Paul, Debtors signed the application and the Home Im-

---

**1.** Plaintiff's Exhibit 3 is a copy of Debtors' 1993 federal income tax return and W–2s.

**2.** We note that immediately preceding their signatures is the following statement:

This application for credit sale will be submitted to PNC Bank,.... Everything that I have stated in this application is correct to the best of my knowledge....

provement Installment Contract, *see* Plaintiff's Exhibits 1, 2, as well as a number of other forms that were not introduced into evidence. Mr. Paul testified that Debtors signed the application in his presence. Debtors testified that they did not sign the document in his presence.

The testimony established that the completed application was faxed by Jerico to PNC where the data was put into PNC's computer. Sandra Gould, an employee of the bank, testified that she reviewed the information from the credit application on her computer screen to determine whether Debtors were creditworthy. Ms. Gould did not see the application itself. She also obtained and reviewed Debtors' credit report. She testified that PNC is willing to approve home improvement loans of the nature involved in this case if the debt to income ratio does not exceed 40 percent. Based upon the amount of debt and income information that appeared on Debtors' application and their credit report, PNC determined that Debtors' debt to income ratio was 33 percent. Ms. Gould testified that had the application correctly indicated that Mr. Rodriguez's income was only $20,000.00 annually, the debt to income ratio would have been higher than 40 percent and the loan would have been refused. Debtors, however, assert that even had Mr. Rodriguez's income been stated accurately, based upon their actual 1993 income as reflected in their tax return, they would have qualified for the loan. Debtors contend that, using a 40 percent debt to income ratio, they would have been slightly under the maximum 40 percent ratio. PNC counters that in signing the application in blank, Debtors acted with such reckless disregard of the truth that their obligation to the bank should be declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Moreover, according to PNC, even if Debtors' version of the facts is believed and they told Jerico that their annual income was $20,000 for Mr. Rodriguez and $9,600 to $12,000 for Mrs. Rodriguez, PNC would have relied on the income reported on the July application, not on a tax return which contained income through December. The tax return listed two additional sources of income for Mr. Rodriguez that were never mentioned in the July application,

and the total income from those two sources was $6,934.44. The undisclosed $6,934.44 is the income which, when combined with the $29,600 to $32,000 allegedly reported by Debtors to Jerico would have put Debtors within the 40 percent debt ratio acceptable to PNC.

PNC contends that the main dispute centers on whether Debtors intended to deceive PNC. Debtors assert that PNC's reliance on the application was not reasonable. PNC seeks judgment for the following damages:

| | |
|---|---|
| Principal Balance as of 5/94 | $15,071.64 |
| Interest, 5/94 to date | 1,498.65 |
| Attorney's Fees | 1,379.45 |
| Expenses | 121.00 |
| Total | $18,070.74 |

■ To establish nondischargeability under § 523(a)(2)(B), PNC must prove, to a preponderance of evidence, that Debtors obtained their financing with an intent to deceive, using a written statement that they published or caused to make that contained materially false information pertaining to their financial condition upon which the bank reasonably relied. 11 U.S.C. § 523(a)(2)(B); *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Cohn*, 54 F.3d 1108 (3d Cir.1995).

First, we will examine Debtors' contention that they would have been eligible for the loan based on their annual adjusted gross income of $38,735.00 as shown in Exhibit 3, the 1993 tax return. In July, 1993, when Debtors requested the home improvement loan, Debtors did not have available to them all of the information which appears on the tax return. For instance, Debtors testified that they told the Jerico representative that Mr. Rodriguez's income was between $19,000 and $20,000 a year and that Mrs. Rodriguez's income was between $800 and $1,000 per month ($9,600 to $12,000 per year), a total maximum combined income of $32,000. At no time did Debtors disclose to PNC (or acknowledge at trial) either additional income or its source. The extra, nondisclosed income is the difference between the combined income figure testified to by Debtors and that shown on their tax return, Exhibit 3. Therefore, to the extent Debtors failed to disclose the additional income, they published

or caused to be published to PNC a materially false statement.

Furthermore, it is unclear when Debtors earned the additional income. If it was earned prior to the submission of the loan application, they should have disclosed it, and failing to do so was a material falsity. On the other hand, if the additional income was earned after Debtors filed the loan application, it would not have made Debtors eligible for the loan because the only income relevant to determining their loan eligibility was that known to Debtors and disclosed to the bank at the time Debtors applied for the loan. The court credits Ms. Gould's testimony that had the application reflected Debtors' acknowledged income of $32,000, as they testified it should have, they would not have been eligible for the loan since their debt-to-income ratio would have been 47 percent: i.e., $1,260 (monthly debt obligation) divided by $2,667 (monthly income).

■ Therefore, we must determine whether, as PNC alleges, Debtors intended to deceive PNC or whether PNC reasonably relied on the loan application. The resolution of the dispute with respect to Debtors' intent depends primarily on which version of the facts is credited. The court credits the version advanced by PNC and finds that Mr. Paul presented the completed application to Debtors for their review before it was submitted to PNC.

Mr. Rodriguez's assertion that he signed the loan application in blank is not credible. Debtors admitted that Mr. Rodriguez was employed as a senior adjuster with a bank. Although he stated that his position did not routinely involve reviewing applications for credit, he testified that he had dealt with credit applications on an infrequent basis but knew a lender would rely on the information in an application to make or deny a loan. A person with his occupation and experience should appreciate the significance of signing

a document in blank. Mr. Rodriguez testified that he thought it was "strange" that he was asked to sign a blank application. Even if we were to credit Debtors' version, we conclude that signing financial statements or "submitting forms in blank, without concern or knowledge of their content on completion," amounts to gross recklessness and establishes an intent to deceive. *In re Weiner,* 86 B.R. 912, 915 (Bankr.N.D.Ohio 1988), citing *Massey–Ferguson Credit Corp. v. Archer,* 55 B.R. 174 (Bankr.M.D.Ga.1985).

In *In re Weiner, supra,* the debtor was an educated businessman who signed and submitted a loan application and a personal financial statement in blank. The court found that such conduct amounted to gross recklessness regarding the veracity of the documents and thereby constituted an intent to deceive. 86 B.R. at 915. In the instant matter, regardless of when Debtors signed the application, we find that they had an opportunity to review and revise the completed form before it was submitted to PNC because it was presented to them by Mr. Paul. Immediately above Debtors' signatures on the loan application is the statement that "[e]verything that I have stated in this application is correct to the best of my knowledge." Plaintiff's Exhibit 1. Therefore, we find that Debtors intended to deceive the lender[3] when they signed the application containing inaccurate income figures.

■ We also find that the information on Debtors' application was materially false. Debtors significantly overstated their income by listing it as $51,000, which is $19,000 more than the $32,000 they admitted in court and $12,265 more than their actual income of $38,735. This clearly qualifies as a material falsity and a substantial untruth.[4]

In *In re Cohn,* 54 F.3d 1108 (3d Cir.1995), the Court of Appeals for the Third Circuit held the debtor responsible for false informa-

---

3. Mr. Rodriguez testified that he did not read the name "PNC" on the application. He believed it would be presented to a government agency for a loan, not to a bank, but he knew it would be given to a lender.

4. The Court of Appeals for the Third Circuit recently stated that: "Material falsity has been

defined as 'an important or substantial untruth.' A recurring guidepost used by courts has been to examine whether the lender would have made the loan had he known of the debtor's true financial condition." *In re Cohn,* 54 F.3d 1108, 1114 (3d Cir.1995), citing *In re Bogstad,* 779 F.2d 370, 375 (7th Cir.1985).

tion provided on an application form by the representative of the financial company from which the debtor was applying for a surety. The debtor relied upon the representative to fill out the application and related documentation using information the debtor had previously provided to the representative. After the representative completed the application, the debtor reviewed it (although he contended he did not read each page) and signed it. On the signed application, however, was the following representation:

... THE UNDERSIGNED FURNISH THIS APPLICATION AND THE INFORMATION CONTAINED THEREIN INCLUDING A TRUE AND ACCURATE STATEMENT OF THE UNDERSIGNED'S FINANCIAL CONDITION AS OF THE DATE OF THIS APPLICATION.

*In re Cohn*, 54 F.3d at 1112. The court, in finding the debtor responsible for the false information filled out by the representative, pointed out that the debtor signed the application and made representations to the creditor upon which the creditor relied. *Id.* at 1119.

Similarly, in this case, Debtors cannot escape responsibility for the false information on their loan application form. The documentary evidence and credible testimony presented to this court establish that, although Debtors did not fill out the loan application form, they signed it, made the representations on it, and reviewed it in completed form before it was submitted to PNC. In permitting the application to be submitted containing a substantial misstatement of their income, Debtors acted with such reckless disregard of the truth that they are deemed to have had the requisite intent to deceive PNC.

We further find that PNC reasonably relied on the completed signed application inasmuch as it adhered to its standard lending practices and credit verification procedures. Sandra Gould, an employee of PNC, testified that she verifies employment only if it is of less than two years' duration. Mr. Rodriguez had worked for the Bank of Lancaster for more than two years and Mrs. Rodriguez had been employed for about four years. Based on Ms. Gould's experience and the fact that she occupied a position similar to that of Mr. Rodriguez as stated in the loan application, she did not verify his employment. Mr. Rodriguez's length of employment, position, and amount of income as stated in the application obviated the necessity for verification.[5] In *In re Cohn*, the Court of Appeals discussed the reliance element of § 523(a)(2)(B) and concluded that it is met if the false statement is "capable of influencing, or had a natural tendency to influence, a creditor's decision." 54 F.3d at 1115. Ms. Gould substantiated PNC's actual reliance on the application. The discrepancy between the actual and reported income figures is substantial and the court finds that it was material to PNC's decision to award the loan. The amount of income stated on the application compared to Debtors' existing debt was a pivotal factor in PNC's decision to make the loan to Debtors. Ms. Gould's testimony concerning the standard for approval of this type of loan was uncontradicted. Furthermore, there were no red flags in the credit application or credit report that would have put PNC on notice to investigate Debtors' financial situation further. *In re Cohn*, 54 F.3d at 1117.[6]

In light of the foregoing, we find that Debtors' representations on their loan application were materially false, that Debtors knew of the falsity, failed to correct it when given the opportunity and, therefore, intended to deceive PNC, and that PNC would not have made the loan had it known of Debtors'

---

5. Hal Paul testified that Jerico obtains a credit report but the lending bank must verify income if it chooses to do so.

6. *Cohn* recited three factors by which to determine reasonable reliance: "(1) the creditor's standard practice in evaluating credit-worthiness ...; (2) the standards or customs of the creditors' industry in evaluating credit-worthiness ...; and (3) the surrounding circumstances existing at the time of the debtor's application...." 54 F.3d at 1117. Although there was no evidence submitted regarding industry standards with respect to the evaluation of credit-worthiness, the result does not change inasmuch as Debtors presented no testimony or evidence to refute the reasonableness of the credit application review procedures employed by Ms. Gould.

true financial condition. Given the totality of the circumstances, Debtors exhibited a reckless disregard for the accuracy of the information on the application. Such conduct is sufficient to allow the inference of an intent to deceive the creditor. *In re Cohn,* 54 F.3d at 1118–19. Debtors' obligation to PNC is nondischargeable.

An appropriate Order will be entered.

### ORDER

And now, to-wit, this **2nd** day of **August, 1995,** for the reasons set forth in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED AND DECREED** that the obligation of Debtors, Frank and Carmen A. Rodriguez, to PNC Bank, N.A., in the amount of $18,070.74 is nondischargeable.

The Clerk shall close this adversary.