In re Donna Jane
KOLBFLEISCH, Debtor.

The FARMERS NATIONAL BANK OF
CANFIELD, Plaintiff,

v.

Donna Jane KOLBFLEISCH,
Defendant.

Bankruptcy No. B88–0002–Y.
Adv. Nos. 88–0015, 88–0016.

United States Bankruptcy Court,
N.D. Ohio.

Feb. 8, 1989.

Gary J. Rosati, Canfield, Ohio, for plaintiff.

Richard G. Zellers, Youngstown, Ohio, for defendant.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

These twin causes of action are before the Court to determine whether the Debtor generally is entitled to a discharge and whether a specific obligation is dischargeable.

Beginning in January 1985, it appears that the Debtor cohabited with one Larry

Welling at 16936 Route 224, Berlin Center, Ohio. The residence was owned by Mr. Welling's parents, who also resided there. Over the course of several years, it appears that the Debtor and Mr. Welling purchased at least a dozen vehicles, many of which were wrecked, and proceeded to strip the cars and sell individual parts from the vehicles. The Debtor was generally aware of Mr. Welling's practice of selling automotive parts from vehicles. The proceeds from these sales apparently were used in part to pay Debtor's obligations.

On March 28, 1986, the Debtor applied for, and apparently was approved for, a Three Thousand & 00/100 Dollar ($3,000.00) loan from City Loan Bank ("City Bank"). On or about March 31, 1986, the Debtor and Mr. Welling apparently decided to purchase a 1984 Chevrolet Citation "as is" from Vintage Auto Sales ("Vintage Auto"). Pursuant to this transaction, Mr. Emmanual (also known as "Skip") Williams completed a loan application for The Farmers National Bank of Canfield ("Farmers") to finance the purchase of the vehicle. Mr. Williams testified that the information for the application was elicited from the Debtor; the Debtor disputes this. Among others, the application incorrectly stated that the Debtor owned her own home and was employed as a receptionist at Century 21 earning approximately Two Hundred & 00/100 Dollars ($200.00) per week. The application also neglected to note the City Bank loan which had been procured three days earlier. Finally, the application was allegedly signed by the Debtor, although the Debtor contends that her signature was forged. Mr. Williams called Farmers and conveyed the information he had received to a loan secretary, Ms. Cindy Young. Ms. Young requested and received a Credit Bureau report on the Debtor and forwarded the information to Mr. Alfred Ridel, a loan officer, for review. A loan for Four Thousand, Three Hundred Seventy–Nine & 00/100 Dollars ($4,379.00) apparently was approved · on April 1, and funds were disbursed on April 2, 1986.

The Debtor testified that the engine in the new vehicle failed about one month later. Farmers refused to extend further credit to either the Debtor or Mr. Welling to repair the engine. Farmers contends that the vehicle was operational until September, 1987. In either event, the vehicle eventually failed and was not repaired. Sometime after the vehicle ceased operating, parts were removed from the automobile and presumably sold.

In November 1987, the Debtor defaulted on the loan and Mr. Vince Luce, a collection manager at Farmers, attempted to contact the Debtor concerning her delinquency. When telephonic and written notice proved fruitless, Mr. Luce visited the Debtor's residence in Berlin Center. Initially, the Debtor falsely told Mr. Luce that the car was not there. However, after contacting her attorney, the Debtor admitted the car was in a barn in back of the residence. Mr. Luce viewed the car and reported that it evidently had been stripped for parts.[1]

On November 20, 1987, the Debtor left the Berlin Center address and moved elsewhere. On January 5, 1988, the Debtor filed a Petition for Relief under Chapter 7 of Title 11 of the United States Code. On August 9, 1988, Farmers filed two (2) Third Amended Complaints. The first Complaint asked the Court to find the specific Farmers obligation to be nondischargeable pursuant to Sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6) of the United States Bankruptcy Code. The second Complaint asked the Court to generally deny the Debtor a discharge pursuant to Sections 727(a)(2), (4) and (5) of the United States Bankruptcy Code. A trial was held on October 24, 1988.

## I. EXCEPTION TO DISCHARGE

11 U.S.C. Secs. 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6) read, in pertinent part:

A discharge ... does not discharge an individual debtor from any debt—

. . . . .

1. Mr. Luce indicated that the 1984 Citation was missing, among other things, the hatchback, the engine, much of the interior, and at least one door.

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

.  .  .  .  .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

## A. First Count

In its First Count, Farmers alleges that the Debtor's obligation to it ought to be nondischargeable by virtue of 11 U.S.C. Sec. 523(a)(2)(B). This Court has previously held that the elements for nondischargeability under Sec. 523(a)(2)(B) are:

(1) debtor made a materially false representation in writing;

(2) the false writing concerned the debtor's financial condition;

(3) the creditor relied on the representation in extending credit and the creditor's reliance on the representation was reasonable;

(4) the representation was made with the intent to deceive.

*Credithrift of America v. Greene (In re Greene)*, 85 B.R. 747, 750 (Bankr.N.D.Ohio 1988).

Plaintiff maintains that Debtor failed to list a Three Thousand & 00/100 Dollar ($3,000.00) debt to City Bank on the loan application for Farmers, which was completed by Mr. Williams.[2] Debtor's counsel responds that (1) the Debtor made no financial statement; (2) no representations were made to Farmers; and (3) Farmers did not rely on the statement.

■ Mr. Williams testified unequivocally that he had obtained the financial information from the Debtor. The Debtor testified that she provided no statement to Vintage Auto concerning her financial condition. Viewed in the context of all the evidence, the Court does not find the Debtor's testimony to be persuasive. She fails to offer any suggestion how Mr. Williams obtained the information contained on the statement, which is substantially correct in many respects.[3] In support of her contention, the Debtor points out that her father's name is spelled incorrectly, a telephone number is incorrectly listed, and the signature at the bottom of the application was not hers. The errors can be attributed to Mr. Williams' having recorded the information on the application so that a misspelling or number transcription would not be unusual. A comparison of the signature appearing on the Debtor's Schedules to the one on the statement supports the Debtor's contention that she did not sign the statement. However, the Court does not find this factor alone to be determinative. The Court believes that the Debtor provided financial information to Mr. Williams, who recorded it on the application. Although she may have left Vintage Auto before signing the application, her provision of the information is sufficient to constitute a "materially false representation in writing concerning her financial condition." The Court also concludes that the Debtor's intent was to deceive Vintage Auto or any financial institution that chose to finance the transaction.

■ The Debtor also argues that she made no representations to Farmers.

---

**2.** Whether by design or inadvertence, Farmers failed to address this Complaint, as well as the second count in its other Amended Complaint, in its Post–Trial Brief. It is unclear whether this was intended as a waiver of those arguments.

**3.** If the Debtor believes that Mr. Welling provided the information to Mr. Williams, the Court questions why Mr. Welling was not joined as a party, subpoened to testify, or why other testimony of this belief was not offered by Debtor.

While it is true that her representations were made to Vintage Auto which, in turn, transmitted them to Farmers, she must have known the purpose for which the information was elicited. She must have known that the information would be transmitted to a bank in order to arrange financing. It would be unreasonable to shield the Debtor from liability for her misrepresentations simply because her statements were transmitted to Farmers through an intermediary.

■ Finally, the Debtor contends that Farmers did not rely on the statement. Mr. Ridel testified that the application and credit report were the only documents utilized in reaching a determination regarding the approval of the loan. However, Mr. Ridel never indicated the extent to which he relied on the statement of liabilities in the application, which omitted the City Bank loan. Mr. Ridel only testified that he would have been concerned if a large obligation would have been omitted which would have required further investigation. The Court has some reason to question these statements due to his testimony regarding the amount of obligations omitted from the application but revealed on the credit report. Even accepting his statements as true, Mr. Ridel's testimony is insufficient to show reliance. The credit report showed other substantial obligations that a prudent lender would almost certainly question. Accordingly, we dismiss the Count for Plaintiff's failure to prove that Farmers reasonably relied on any misrepresentations of Debtor in extending credit to her.

### B. Second Count

The Plaintiff also contends, in its Second Count, that the same omission is reason to withhold a discharge of this obligation pursuant to 11 U.S.C. Sec. 523(a)(2)(A). The Court dismisses this Count as a matter of law. Section 523(a)(2)(A) allows for the nondischargeability of a debt for property "obtained by false pretenses ... *other than a statement respecting the debtor's ... financial condition.*" The allegation that the Debtor neglected to inform Mr. Williams of the City Bank loan certainly concerns the Debtor's financial condition. Therefore, the Plaintiff has failed to state a basis upon which relief may. be granted under Sec. 523(a)(2)(A).

### C. Third Count

■ In its last count, the Plaintiff alleges that the Debtor's obligation is nondischargeable for willful and malicious injury pursuant to 11 U.S.C. Sec. 523(a)(6). Three requirements must be satisfied to render a debt nondischargeable pursuant to this Section—(1) an injury; (2) that is willful; and (3) malicious.

Impairment of Farmers's collateral through the removal of parts from the 1984 Citation, which vehicle served to secure the Debtor's obligation, is a sufficient injury to meet the first element. The Debtor's actions must also be "willful." The Sixth Circuit defined "willful" to mean deliberate or intentional. *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986). We cannot credit Debtor's testimony that she was unaware that parts were being sold off the 1984 Citation. Debtor was aware of the sale of parts from other cars purchased by them. This one was not operating, and her initial false statement to Mr. Luce, changed after speaking with her attorney, suggests the contrary is true. Thus, her action or acquiescense is sufficient to make the injury willful. Finally, the injury also must be malicious. The *Wheeler* court held that "malicious" means "in conscious disregard of one's duties or without just cause or excuse." The Debtor had a duty not to destroy Farmers's collateral. The piecemeal sale of parts off of the Citation was comparable to common law conversion. Hence, the Court finds the Debtor's actions to also be malicious. Plaintiff's request to deem the Farmers obligation nondischargeable is sustained as to Count Three of the Complaint.

### II. OBJECTION TO DISCHARGE

The Plaintiff also filed a Complaint asking the Court to withhold a discharge from the Debtor pursuant to 11 U.S.C. Sec. 727(a)(2)(A), (4) and (5). These Sections provide, in part:

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an offer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

## A. *First Count*

■ In its First Count, Farmers asserts that the Debtor ought to be denied a discharge because of the Debtor's intent to hinder or delay Farmers by certain actions she took regarding her property. In order to deny a Chapter 7 debtor a discharge based on 11 U.S.C.Sec. 727(a)(2)(A), a plaintiff must show:

(1) The debtor either has transferred, removed, destroyed, mutilated or concealed property of the debtor, or has permitted such to occur; and

(2) The debtor possessed actual intent to hinder, delay, or defraud a creditor or an officer of the estate when such transfer, removal, destruction, mutilation or concealment was committed; and

(3) The transfer or other action to the property occurred within one (1) year of the filing of the Petition.

The evidence establishes that Debtor permitted the transfer, removal or mutilation of property of the estate. While we are unsure of whether the Debtor explicitly authorized the removal of parts from the car by Mr. Welling, implicit permission is sufficient. Implicit permission can be found from the Debtor's allowance of both possession and use of the vehicle by Mr. Welling. While we are not persuaded that the Debtor consummated the act of concealment of her assets,[4] we are not persuaded that the Debtor was unaware of the "mutilation" of the 1984 Chevrolet Citation, even though Debtor testified that she was unaware that parts were sold off the 1984 Citation. The Court simply does not credit this testimony. A review of the record as a whole convinces us that total ignorance on her part was highly unlikely. In addition, Mr. Luce testified that he clearly recalls the Debtor explaining "we parted the car out" in November, 1987. Awareness of the sale of these parts further buttresses our conclusion that the Debtor acted in a manner envisioned by 11 U.S.C.Sec. 727(a)(2)(A).

The second requirement is that the debtor have actual intent to hinder, delay or defraud a creditor when the transferral, removal, destruction, mutilation or concealment of the property is committed. Farmers asserts that the Debtor actually intended to hinder or delay it. The only proof of this intent, underscored by Farmers in its Post–Trial Brief, is the Debtor's misrepresentation to Mr. Luce concerning the loca-

---

**4.** Even though the Debtor made an overt and intentional misrepresentation to Mr. Luce, there evidently was no reliance on the misrepresentation. More importantly, the Debtor immediately remedied the statement after conferring with her attorney. We do not view this to be "concealment" as the term is utilized in 11 U.S.C.Sec. 727(a)(2).

tion of the vehicle. For reasons outlined above, we do not find that fact alone to be dispositive. The Court must look at the totality of circumstances in order to determine whether the Debtor had the requisite intent. A review of the record as a whole convinces us that Farmers has not sustained its burden of proof on this element.

Finally, there was no evidence to show that the automotive parts were removed from the vehicle within one (1) year of the filing date. The estimated facts do not support such a conclusion. Accordingly, Farmers's First Count in its Objection to the Debtor's discharge is dismissed.

### B. Second Count

In its Second Count, Farmers asserts that the Debtor made false oaths which would be sufficient to deny a discharge pursuant to 11 U.S.C.Sec. 727(a)(4). Its Complaint lists seven statements allegedly made by the Debtor at the first meeting of creditors upon which the Debtor relies for its allegation. Farmers introduced no evidence showing either that the statements were made, let alone that they were false. Thus, this Count is dismissed.

### C. Third Count

■ 11 U.S.C.Sec. 727(a)(5) allows the denial of a discharge where the debtor fails to satisfactorily explain any loss of assets to meet the debtor's liabilities. Farmers points to the Debtor's Schedules which list her as the owner of a 1980 Chevrolet Monza, which was listed as "gone." 11 U.S.C. Sec. 727(a)(5) demands that a debtor explain "any loss of assets ... to meet the debtor's liabilities." If the assets which are lost had no substantial value beyond secured claims, they could not be used to meet the Debtor's liabilities, thus removing them from the ambit of Sec. 727(a)(5). Debtor did not argue that the Monza was valueless. The Debtor testified that she had no idea either where the Monza was located or who possessed it. Debtor's Schedules reveal that her Ten Thousand, Five Hundred & 00/100 Dollar ($10,500.00) obligation to City Bank was secured by this vehicle and a 1980 Citation. Neither vehicle had any appreciable value, at the time of filing, even if in excellent condition.

The "NADA Official Used Car Guide" for that month does not even list vehicles of that vintage. It does not appear that there would have been any equity in them beyond the City Bank claim. It appears to the Court that the Debtor exhibited a disregard of her responsibilities concerning the disposition of assets for which she was obligated. However, the unique factual circumstances here found are not sufficient to withhold a discharge pursuant to Section 727(a)(5). Neither other secured creditors nor the Trustee found cause to pursue this subject. Farmers' position is adequately protected by finding Debtor's obligation to it to be nondischargeable.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

An appropriate Order consistent with this Opinion shall be entered.