In re Trannie Lee HOLMES and Jana Holmes, Debtors.

**FIRST NATIONAL BANK OF AMARILLO, Plaintiff,**

v.

**Trannie Lee HOLMES and Jana K. Holmes, Defendants.**

**Bankruptcy No. 290–20028–7. Ad. No. 290–2022.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

Dec. 4, 1990.

**506**

Qlo Crum, Amarillo, Tex., for debtors.

Betty H. Little, Hinkle, Cox, Eaton, Coffield & Hensley, Amarillo, Tex., for the Bank.

Donald F. Schofield, Amarillo, Tex., Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON DISCHARGE

JOHN C. AKARD, Bankruptcy Judge.

The First National Bank of Amarillo (Bank) seeks to have the discharge of Trannie Lee Holmes and Jana K. Holmes (Debtors) denied under § 727(a)(5) of the Bankruptcy Code[1]. The court finds that the Debtors satisfactorily explained the loss of their assets and, therefore, the Bank's complaint should be denied.

### Facts

On June 11, 1984 the Debtor, Trannie Holmes, borrowed $30,100.00 from the Bank to use in connection with his hairstyling salon known as Trannie's. As security for the note Mr. Holmes executed a security agreement on his business equipment and inventory. Mrs. Holmes prepared a handwritten list of equipment which was attached to the security agreement. Both Debtors executed a similar security agreement on April 1, 1987. However, no list of equipment was attached to that security agreement. The security agreements covered all equipment and inventory then owned or thereafter acquired by the Debt-

ors. The Bank filed appropriate financing statements.

On April 11, 1989 both Debtors signed a note to the Bank for $15,524.16 payable in 12 monthly installments of $708.20 each. Apparently, this note renewed the balance on prior notes. It was secured by a deed of trust dated April 1, 1987[2] and by equipment and inventory described in security agreements dated June 11, 1984 and April 1, 1987.

On August 2, 1988 the Debtors executed a note to the Bank for $9,000 payable in 24 monthly installments of $424.38 commencing September 2, 1988. The note was secured by a security agreement and financing statement on an Apple Mac Plus computer.

The Debtors filed for relief under Chapter 7 of the Bankruptcy Code on February 8, 1990. Both Debtors worked in the salon, and they continued in business until Saturday, February 25, 1990, when they moved from the property. On Monday, February 27, 1990, Mr. Holmes began working as a hairstylist at a salon owned by a third party. Mrs. Holmes secured other employment. The Debtors delivered the keys to their salon "to the landlord"[3] on February 27, 1990. Mrs. Holmes testified that on that date a bank officer called inquiring about their bankruptcy and she advised the bank officer that the keys had been delivered "to the landlord".

The Bank took no action in the matter until the Chapter 7 Trustee abandoned the collateral on March 22, 1990. Then, accompanied by the first lienholder, a bank officer entered the premises. The officer testified that there were two locks on the door, the building appeared to be secure, and there was no evidence of break-in or vandalism. The owner of the building requested that the equipment remain on the premises while the property was offered for sale. The Bank agreed and the equipment

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. The deed of trust was a second lien on property which the Debtors were purchasing for their salon. Mr. Holmes testified that land values went down drastically and he could not afford

to keep the property. The testimony did not reveal whether the Bank attempted to foreclose its second lien on the property.

3. Apparently this is a reference to the holder of the first mortgage on the property.

remained in the building for an undisclosed period of time.

The Bank's complaint is founded upon a handwritten list of equipment and inventory dated April 10, 1989 and signed by the Debtors. This list was not attached to any security agreement but apparently was made in conjunction with the renewal note of April 11, 1989. No inventory was in the building when the Bank officer entered it. Mr. Holmes testified that the inventory was low, but that he took between $500.00 and $700.00 (at wholesale price) worth of inventory items when he moved to the new salon on February 25, 1990. He acknowledged that the inventory was part of the Bank's collateral. Based on this admission, the court granted the Bank a judgment for $700.00 against Mr. Holmes.

Mr. Holmes identified various items of equipment he knew to be the Bank's collateral which he took with him to the new salon on February 25, 1990. The court instructed him to surrender those items to the Bank within ten days of the September 10, 1990 hearing.

At hearing, the Debtors were not questioned about each item on the April 10, 1989 equipment list. Many items were the same as those on the 1984 list. Mr. Holmes identified some of them as having become worn out or damaged and disposed of. Mr. Holmes testified that an antique facial chair shown on the April 10, 1989 list with a value of $5,000.00 belonged to a third party who took it back prior to the time the salon closed.

The principal testimony at hearing concerned a software package known as "Comb–Puter Images". The software was not listed on any security agreement nor on the April 10, 1989 list.[4] The Bank asserted that the software was not with the computer when it was picked up. Mrs. Holmes testified that the software was adjacent to the computer at the time they left the building on February 25, 1990. The Bank officer who initially inspected the equipment made no notation concerning the existence or non-existence of the software.

No testimony at hearing valued the computer software. The software was used in the styling business by taking a customer's picture and then showing that picture on the computer with various hair styles so the customer could pick the style she preferred. Mr. Holmes testified that his equipment would take one picture at a time and that the images were in black and white. He stated that another salon in town had a similar program which took three color pictures at a time. He opined that the value of the computer and program which he purchased were reduced materially when the color program became available. A Bank officer testified that she received one telephone inquiry concerning the software.

### Statute

The Bank objected to the Debtors' discharge under § 727(a)(5) which provides that the court shall grant the Debtor a discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph any loss of assets or deficiency of assets to meet the debtor's liabilities."

In reviewing an identical provision in the Bankruptcy Act of 1898, a three-judge bankruptcy appellate court stated:

> The word "satisfactorily[,]" ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the bankrupts say with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented.

---

**4.** Mrs. Holmes testified that when she made the 1984 list she listed all of the equipment and tools in the salon regardless of whether they were owned by the Debtors or by hairstylists who worked in the salon. When the Bank officer asked her to make an inventory of everything in the salon, she assumed she was to include items owned by other parties. A review of the April 10, 1989 list indicates that few of the items of equipment might be owned by third parties. The most likely item was one listed as: "200 assorted brushes & combs $400.00." As mentioned above, the Debtors asserted that the antique facial chair was owned by a third party.

*In re Shapiro & Ornish,* 37 F.2d 403, 406 (N.D.Tex.1929), aff'd, 37 F.2d 407 (5th Cir. 1930).

### Standards for Decision

The standards to be used by the Bankruptcy court in deciding an objection to the discharge under § 727(a)(5) are set out in *G & J Investments v. Zell (In re Zell),* 108 B.R. 615 (Bankr.S.D.Ohio 1989). The court stated:

On its face, this provision allows a debtor to provide the court with a satisfactory explanation of loss or deficiency of assets at any time "before determination of denial of discharge." (citation omitted). Here, the initial burden of going forward with enough evidence to demonstrate a substantial loss of assets rests with the objector. Once the objector produces enough evidence to establish the objection, the burden shifts to the debtor (citation omitted). Essentially, the debtor must come forward with an explanation of loss or deficiency of assets

... It does not require or even allow inquiry into the substantive character of the loss or deficiency of assets itself (citation omitted). In fact, § 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily describe or account for the disposition. As such, the Court's inquiry is limited to whether the debtor has made or now makes an explanation for the loss or deficiency of assets at issue, and whether the explanation is satisfactory. These are questions of fact (citations omitted).

The notion of a "satisfactory explanation" is not defined in the Code.... The standard is one of reasonableness and credibility (citations omitted).

The debtor must testify about his losses in a manner which exhibits good faith in the conduct of his financial affairs and in his efforts to make the explanation (citation omitted). [T]he question of satisfactoriness turns on the nature of the

debtor's business, financial affairs, and lifestyle....

While the debtor must provide the Court with more than mere generalized, vague, and uncorroborated statements in oral testimony, the Code provision does not dictate denial of discharge for failure to produce corroborating papers where the debtor's testimonial assertions bear sufficient credibility. *Id.* at 628–29 (citations omitted).

■ A discharge relieves the debtor of legal responsibility for all debts deemed dischargeable and provides the debtor with a "fresh start". For this reason, the provisions providing for the denial of discharge are to be construed liberally in favor of the debtor and strictly against the creditor. "The bankruptcy court should limit denial of discharge to those cases where a debtor's actions are truly blameworthy in an equitable sense." *Id.* at 623.

### Discussion

The court is concerned about whether one creditor can use § 727(a)(5) with respect to items missing from its security agreement or whether the creditor's complaint must point to conduct of the debtors which would affect all creditors. This is an unsettled issue. The Ninth Circuit (in a case which otherwise found that the debtors were not entitled to a discharge) stated that debtors who did not offer a satisfactory explanation for failing to produce a tractor for repossession by a creditor could have their discharge denied under § 727(a)(5). *Devers v. Bank of Sheridan (In re Devers),* 759 F.2d 751, 754 (9th Cir. 1985). A debtor who "stripped" one car and listed another vehicle in her schedules as "gone" was found to have a non-dischargeable debt to the lender under § 523, but the lender's complaint to deny the discharge under § 727(a)(5) was denied because, even if the car had been in good condition, there would have been no equity for the unsecured creditors. *Farmers Nat'l Bank v. Kolbfleisch (In re Kolbfleisch),* 97 B.R. 351, 356 (Bankr.N.D.Ohio 1989).

In this case there are three areas of inquiry. The first is the antique facial chair which initially appeared on the equipment list of April 10, 1989 valued at $5,000.00.[5] The only testimony elicited at hearing was that a third party owned it and took it back prior to the time the salon closed. Since it was not owned by the Debtors, the retaking cannot be considered a loss of the Debtors' assets.

The second area of inquiry is the absence of several items shown on the 1984 list. Mr. Holmes testified that a number of assets listed on the 1984 list had become worn out or damaged and were disposed of. This is a logical explanation with respect to items in daily use in a hair salon and the court finds this testimony credible.

The final area of inquiry is the software package known as "Comb–Puter Images". Mrs. Holmes testified that the software was in the building when they left it. There was no evidence elicited which contradicted this testimony. The Bank only stated that the package was not among the items delivered to the auctioneer several months later. The testimony indicated that the computer program has a negligible present value so that if the Debtors failed to satisfactorily explain its absence, the court would be hard pressed to deny the discharge on that ground alone. However, the court finds Mrs. Holmes' testimony credible.

## CONCLUSION

Section 727(a) denies a discharge to a debtor who fails to satisfactorily explain a loss of his assets or a deficiency of his assets to meet his liabilities. Considering the nature of the Debtors' business and their lack of sophistication in business matters, the court finds their explanation of the loss of their assets satisfactory. The Bank's complaint will be denied.

ORDER ACCORDINGLY.[6]

---

5. The equipment list of April 10, 1989 was not made a part of any of the Bank's security documents. Consequently, it cannot be said that the Bank relied on the Debtors' ownership of that chair in renewing the loan. In any event, detrimental reliance by a creditor is not an element in an objection to the discharge under § 727(a)(5).

6. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.