In re Robert TORRES and Lucinda Torres, Debtors.

ITT FINANCIAL SERVICES, Plaintiff,

v.

Robert TORRES and Lucinda Torres, Defendants.

Bankruptcy No. 90–0049.
Related Case No. 89–03228.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 29, 1991.

John C. Intagliata, Toledo, Ohio, for plaintiff.

Gordon R. Barry, Toledo, Ohio, for defendants, debtors.

## MEMORANDUM OPINION
## AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Determine Dischargeability of Debt. At the Trial, the parties were afforded the opportunity to present the evidence and arguments they wished the Court to consider in reaching its decision. The Court has reviewed the testimony, exhibits, and the arguments of counsel, as well as the entire record in this case. Based upon that review, and for the following reasons, the Court finds that the debt should be dischargeable as to Mr. Torres and nondischargeable as to Mrs. Torres.

### FACTS

On September 18, 1989, Robert and Lucinda Torres, Debtors/Defendants, executed a promissory note payable to ITT Financial Services (hereinafter "ITT"), Plaintiff, in the amount of Four Thousand Eight Hundred Fifty-six Dollars and Eighty-six Cents ($4,856.86). Pledged as collateral were various entertainment and electronic equipment. On November 11, 1989, less than two months after receiving the loan, the Debtors filed for Bankruptcy. They sought to have the debt owed to ITT discharged.

ITT filed its Complaint to Determine Dischargeability of this Debt, seeking to have it declared nondischargeable under Section 523(a)(2)(B). ITT claims that the Debtors failed to fully disclose their outstanding debts when they filled out the application for the loan. Section 523(a)(2)(B) excepts from discharge those debts obtained through the use of false and fraudulent financial statements.

At the Trial, Mark Williams, Assistant Manager for ITT, testified that he requested and reviewed a credit report on Mrs. Torres prior to the Debtors filling out the loan application. He indicated that the Debtors filled out the application on their own. He testified that when he questioned Mrs. Torres concerning certain debts on the credit report which she did not list on her loan application that he was satisfied with her explanations as to the discrepancies. He stated that he reviewed Mrs. Torres' income at the time the loan was given, but that he did not recall nor did his loan file reflect that he had reviewed Mr. Torres' income, although he did know that Mr. Torres was disabled at the time. From his records, Mr. Williams observed that the Debtors used the proceeds from the loan to pay off a large amount of outstanding bills.

Mrs. Torres testified that she filled out the loan application at the ITT office. She alleged that she did not list all their debts because Mr. Williams informed her that she did not have to do so. She also claimed that the prior Bankruptcy was not listed on the application because apparently Mr. Williams told her not to list it. Mrs. Torres testified that she did answer "no" to question 5—i.e., "Has any employee of [ITT] told you it was unnecessary to list all your current debts?"—despite her earlier testimony to the contrary. Mrs. Torres commented that she failed to make any payments on the loan because her rent was due at the same time and she could not make both payments on time. She said that she intended to pay ITT late. She indicated that she took out the loan because she was hoping to pay off some of her outstanding debts and to avoid garnishment of her wages. She attributed the discrepancy in her actual gross wages and what she had listed on her loan application to her poor ability to make estimations.

### LAW

ITT seeks to have its debt declared nondischargeable under Section 523(a)(2)(B), which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;

(iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

■ To succeed in its claim, ITT must prove the following elements by a preponderance of the evidence: (1) that the Debtors made false representations; (2) that the false writing concerned the Debtors' financial condition; (3) that ITT reasonably relied on the representation in extending credit; and (4) that the representation was made with the intent to deceive. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Kolbfleisch*, 97 B.R. 351 (N.D.Ohio 1989). If there is room for an inference of honest intent, the question of fraud must be resolved in favor of the debtor. *In re Constantino*, 72 B.R. 231 (N.D.Ohio 1987).

A review of the evidence reflects that ITT has established each of these elements by a preponderance of the evidence with respect to Mrs. Torres. However, ITT failed to present any evidence indicating that Mr. Torres made any materially false statements regarding his financial condition. Since ITT failed to meet its burden, the Court finds that the debt is discharged as to Mr. Torres.

■ As to Mrs. Torres, the evidence supports a finding that the first element is met in that the loan application was a materially false statement in writing. The Trans United Credit Report shows that the loan application did not contain all of the Debtor's outstanding obligations. Clearly, an omission, concealment, or understatement of liabilities can constitute a materially false statement. *In re Jones*, 88 B.R. 899, 903 (E.D.Wis.1988); 3 Collier on Bankruptcy ¶ 523.09 (15th ed. 1988).

The second element is satisfied as the loan application contains statements that concern the Debtors' financial condition. ITT met its burden. Mrs. Torres testified that she incorrectly estimated her income and that she did not list all of her debts.

These facts caused the Debtors to appear in a better financial condition than they truly were.

The Sixth Circuit Court of Appeals discussed reasonable reliance in a consumer lending context:

Congress was [when passing § 523] ... concerned that creditors use, when feasible, 'other sources of information, such as credit bureau reports, to verify the accuracy of the [debtor's] list of debts.' In cases where 'minimal investigation and verification almost certainly would have uncovered the falsity of the representations, 'a bank's debt must be discharged if no such investigation had been performed. "Misplaced trust" is insufficient for nondischargeability. A lender must investigate creditworthiness and ferret out ordinary credit information.

*In re Ward*, 857 F.2d 1082, 1084 (6th Cir. 1988) (citations omitted). Thus, it appears that a certain minimum level of investigation and verification is required if an obligation arising from a loan from a commercial lender is to be held nondischargeable.

■ In this case, ITT ran a credit check, thereby having an accurate listing of the Debtors' liabilities on hand at the closing of the loan. ITT noticed the contradiction between the credit report and the loan application and questioned the Debtors on the discrepancies. ITT was satisfied with the Debtors' responses. Mrs. Torres listed their total assets on the application. ITT did an income debt-ratio analysis based upon the loan application, noticing that Fifty-two Percent (52%) of the income went to satisfy debts. Normally, when a debt-ratio is Fifty Percent (50%) or higher, ITT closely scrutinizes the prospective borrowers. One such factor ITT considers is what it refers to as the debtor's "margin rule": One Hundred Fifty Dollars ($150.00) per month per person must be available for living expenses after the debts are paid each month. Although the Debtors' debt-ratio was Fifty-two Percent (52%), ITT still advanced the loan because the Debtors' "margin" was Two Hundred Sixty-eight Dollars ($268.00) per month per person,

well above ITT's minimum guidelines. ITT fulfilled its obligation to make at least a minimal investigation to verify the Debtors' liabilities and to clear up any contradictions.

 Again, ITT met its burden on whether Mrs. Torres had the intent to deceive at the time the promissory note was signed. "Because direct proof of intent (*i.e.*, the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987). Additionally, the debtor's state of mind at the time the loan was made can be inferred from his subsequent conduct. *In re Fitzgerald*, 109 B.R. 893 (N.D.Ind.1989); *In re Krause*, 114 B.R. 582 (N.D.Ind.1988).

██ At trial, Mrs. Torres testified that she had signed the promissory note two months before filing for Bankruptcy. She further testified that at the time the promissory note was signed, she was aware that she was a co-defendant in two legal actions and that she had received letters stating that her wages were going to be garnished. When the Debtor signed the promissory note, she represented to the Plaintiff that she would repay the amount borrowed. This is evidenced by the promise to pay language on the document itself. Yet, Mrs. Torres testified that she never made a payment on the loan. She also represented on the loan application that her net income was more than what it truly was and that the creditors listed on the loan application were the only ones Mr. and Mrs. Torres had. The Court finds that based upon the surrounding circumstances and the Debtor's conduct, it can infer that the Debtor had the intent to deceive the Plaintiff when she made that representation.

The Court finds that Mrs. Torres did knowingly make representations in writing, that these writings concerned the Debtors' financial status; that ITT reasonably relied on the representations in extending credit and that Mrs. Torres had the intent to deceive. Therefore, the Court finds that ITT, having met its burden, should have

the obligation owing to it declared nondischargeable as to Mrs. Torres.

In judging the credibility of the witnesses, the Court has taken into consideration the witness' intelligence, age, memory, demeanor while testifying, the reasonableness of the testimony in light of all the evidence of the case, and any interest, bias, or prejudice the witnesses may have. In reaching the conclusions found herein, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that the Debt owed to ITT Financial Services be, and is hereby, held nondischargeable under Section 523(a)(2)(B) as to Mrs. Torres.

It is FURTHER ORDERED that the Debt owed to ITT Financial Services be, and is hereby, held dischargeable as to Mr. Torres.