**In re Rajitha J. NAIR, Debtor.**

No. 03–31579–H1–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 16, 2004.

Eloise A. Guzman, Houston, TX, for Debtor.

J. Ward Holliday, Dallas, TX, for Triad Financial Corp.

## MEMORANDUM OPINION AND ORDER BARRING FUTURE VIOLATIONS OF BANKRUPTCY RULE 9011

MARVIN ISGUR, Bankruptcy Judge.

This Court must determine whether an attorney violates FED. R. BANKR.P. 9011 when the attorney seeks recovery of attorney's fees for the filing of a motion for relief from the automatic stay on an undersecured claim. Because there is a complete absence of any authority supporting such an award of attorney's fees—and an abundance of authority providing that such an award cannot be made—the Court determines that Rule 9011 sanctions are appropriate.

### Jurisdiction

On November 17, 2004, Triad Financial Corporation ("Triad") filed a notice of appeal in this case. Because a notice of appeal may divest a court of jurisdiction, the Court begins by analyzing its jurisdiction. *See In re U.S. Abatement,* 39 F.3d 563, 568 (5th Cir.1994).

This bankruptcy case was filed on February 3, 2003. A chapter 13 plan was confirmed on May 28, 2003. The plan was modified by order entered on March 10, 2004. On September 11, 2004, Triad filed its motion for relief from the automatic stay. The motion sought leave to repossess the Debtor's 2001 Mazda Tribute. On October 15, 2004, Triad and the Debtor filed a proposed agreed order that provided for adequate protection of Triad's interests in the Mazda. The Court declined to approve the proposed agreed order for reasons set forth below. The Court further entered an order requiring Triad's attorney (J. Ward Holliday) to show cause why Rule 9011 sanctions should not be imposed. The show cause hearing was conducted on November 12, 2004. At the show cause hearing, Holliday failed to of-

fer any authority to justify his conduct. After a substantial discussion, Holliday agreed to file a brief with respect to the show cause order. The Court made an interim, oral sanctions ruling with respect to Holliday's conduct pending the issuance of this order.

Triad requested that the Court enter an amended proposed agreed order modifying the automatic stay. The Court entered the amended proposed agreed order on November 12, 2004.

On November 17, 2004, Triad filed a notice of appeal. Triad's notice of appeal apparently appeals two orders. The first is "the Bankruptcy Court's Order entered on November 12, 2004, ordering Plaintiff's counsel to immediately cease filing in any U.S. Bankruptcy Court § 362 orders which include attorney's fees for Plaintiff's counsel on undersecured secured claims." [1] The second is "the Bankruptcy Court's Order for Fed. Bank. R. 9011 sanctions on Plaintiff's counsel."

After careful review, the Court has determined that the notice of appeal does not divest this Court of jurisdiction. First, the notice is not yet deemed filed. "A notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order or decree shall be treated as filed after such entry and on the day thereof." FED. R. BANKR.P. 8002(a). The oral announcement of a ruling does not trigger the appellate timetable. *Bodin v. Gulf Oil Corp.*, 877 F.2d 438, 440 (5th Cir.1989). Accordingly, this Court must retain jurisdiction to enter its order so that the appeal can go forward. Second, the Court's oral directive was—by its terms—interlocutory. The Court directed the filing of a brief, ordered interim relief, and announced its intention to review the brief in order to determine final relief. Indeed, Triad has now filed its brief. The filing of an interlocutory appeal does not divest the Court of jurisdiction over the remainder of the case. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524–25 (5th Cir.2002). Indeed, an appeal of an order granting interim relief does not divest a court of jurisdiction to hear whether the related, final relief should be granted. *Railway Labor Executives' Ass'n v. City of Galveston,* 898 F.2d 481 (5th Cir.1990). Because this Court only granted interim relief—and reserved the issue of whether permanent sanctions should be imposed—the Court has continuing jurisdiction over this matter.

## Background

Triad's motion for relief from the automatic stay sought, among other things, its attorney's fees and costs for filing its motion for relief from the stay. As set forth below, Triad also alleged—in the same motion—that it was an undersecured creditor.

This matter was not litigated. Instead, Triad and the Debtor submitted an agreed order that purported to resolve the dispute. The proposed agreed order provided that "Debtor shall pay Movant's attorney fees in the amount of $550.00."

---

1. The docket sheet erroneously reflects that the Court ordered "Plaintiff's counsel to immediately cease filing in any U.S. Bankruptcy Court § 362 orders which include attorney's fees for movant's counsel." After Mr. Holliday declined to file a brief, the Court announced that it would enter such an order. However, Mr. Holliday then changed his mind and agreed to file a brief. The Court then announced that it was withdrawing the initial order to allow Mr. Holliday an opportunity to file his brief. The Court then ordered—"on an interim basis"—that Mr. Holliday not file orders in the Southern District of Texas that provide for attorney's fees on undersecured claims until the Court could consider the brief.

As set forth in detail below, the Bankruptcy Code precludes an award of post-petition attorney's fees to a creditor holding an undersecured claim. Accordingly, the Court declined to sign the agreed order. Instead, the Court issued a show cause order to determine whether sanctions were appropriate against Triad's counsel for a violation of FED. R. BANKR.P. 9011. Triad is a national automobile lender; Triad's counsel is a regular practitioner in this Court.[2]

At the show cause hearing, Triad's counsel offered the following explanation as to how he had met his obligations under FED. R. BANKR.P. 9011 when he requested an award of attorney's fees for prosecuting a § 362 motion with respect to an undersecured claim:

1. Triad[3] alleged that it was not seeking funds from the estate. When the Court queried how that was possible since § 1306 made post-petition earnings property of the estate, Triad's counsel disingenuously replied that Triad did not presume to know where the payments came from. Triad alleged that perhaps "Mom's paying for it. Dad's paying for it. They don't want to lose the car." The proposed order, however, required the payments from "the Debtor."

2. Triad further alleged that a debtor could voluntarily repay any debt under § 524(f). Of course, Triad was requesting that this Court order the payment as adequate protection. The Court is prohibited from approving such a voluntary reaffirmation except under § 524(g). Triad does not even allege that its agreement complies with § 524(g).

3. Though requested by the Court, Triad failed to present any case law or other evidence during the entirety of the show cause hearing. Instead, at the Court's request, Triad agreed to file a brief to clarify its argument.

4. At the conclusion of the hearing, Triad requested that the Court enter an order without the provision requiring payment of attorney's fees.

Triad timely filed its brief. This memorandum opinion is issued after the Court's consideration of Triad's brief.

### FED. R. BANKR.P. 9011

Federal Rule of Bankruptcy Procedure 9011 is the bankruptcy equivalent of FED. R.CIV.P. 11. With a few exceptions not relevant here, Rule 9011 imposes substantially the same duties on lawyers and litigants in bankruptcy cases as are imposed by Rule 11 on lawyers and litigants in civil cases.

The fundamentals of Rule 9011 are expressed in Rule 9011(b):

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or un-

---

2. A review of the Court's electronic records reflects that Mr. Holliday has appeared in 1,403 cases. However, Mr. Holliday normally appears through local counsel. The Court has previously expressed its concern about this issue through local counsel. When Mr. Holliday continued to submit agreed orders providing for attorney's fees on undersecured claims, the Court's only alternative was to require Mr. Holliday to appear personally.

3. The show cause hearing was set for Triad's counsel—not Triad. However, Triad—not its counsel—filed the responsive brief and the notice of appeal. For the convenience of the parties, the Court refers to Triad rather than its counsel. Nevertheless, no show cause order was entered against Triad.

represented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. BANKR.P. 9011(b).

■■ For the reasons set forth in this memorandum opinion, this Court concludes that Triad's request for attorney's fees was not justified by "existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Instead, the request was made in the anticipation that it would not be scrutinized by the Court because it was filed as an agreed order. Rather than seeking relief that was within the bounds authorized or permitted by the Bankruptcy Code, Triad sought relief in an agreed order that exceeded the range of relief to which Triad

might possibly have been entitled following an adversarial hearing. For the reasons set forth in this opinion, the Court is not authorized by existing law, or by a nonfrivolous extension of existing law, to award an undersecured creditor with attorney's fees incurred in the prosecution of a motion for relief from the automatic stay.

## Creditor's Right to Attorney's Fees in § 362 Matters

The initial question before the Court is whether a creditor has a general right to recover attorney's fees for the filing of a motion for relief from the automatic stay under § 362 of the Bankruptcy Code. Although the Court has scoured the case law—and Triad's brief—the Court is unable to locate any authority supporting the proposition that there is generally a creditor's right of recovery for attorney's fees under § 362.[4]

Triad's motion for relief seeks to allow Triad to recover its collateral notwithstanding § 362 of the Bankruptcy Code. The Bankruptcy Code is, of course, a federal statute. Recovery of attorney's fees under federal statutes is governed by the "American Rule." The following passage from the Supreme Court sets forth the general rule for the recovery of attorney's fees under a federal statute:

> Congress has not repudiated the judicially fashioned exceptions to the general rule against allowing substantial attorneys' fees.... Nor has it extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted. What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under se-

---

4. As set forth below, oversecured creditors are given a right of recovery under § 506(b).

There is, however, no *general* right of recovery.

lected statutes granting or protecting various federal rights. These statutory allowances are now available in a variety of circumstances, but they also differ considerably among themselves. Under the antitrust laws, for instance, allowance of attorneys' fees to a plaintiff awarded treble damages is mandatory. In patent litigation, in contrast, '(t)he court in exceptional cases may award reasonable attorney fees to the prevailing party.' 35 U.S.C. § 285.... Under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a—3(b), the prevailing party is entitled to attorneys' fees, at the discretion of the court, but we have held that Congress intended that the award should be made to the successful plaintiff absent exceptional circumstances. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). See also *Northcross v. Board of Education of the Memphis City Schools*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). **Under this scheme of things, it is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine.**

*Alyeska Pipeline Svc. Co. v. The Wilderness Soc.*, 421 U.S. 240, 260–61, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (emphasis added).

■ It is beyond dispute that the American Rule applies with equal force in motions for relief from the automatic stay:

The district court's decision denying the Johnsons their attorneys fees was therefore correct. A request for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) is not an "action on a contract"

to which state substantive law would be applied but an action on a federal statute to be decided according to federal law.

*In re Johnson*, 756 F.2d 738, 741 (9th Cir.), cert. denied., 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

Counsel urges the Court to accept the reasoning set forth in Judge McGuire's opinion in *In re Independent American Real Estate, Inc.*, 146 B.R. 546 (Bankr. N.D.Tex.1992). That opinion, however, is inapposite to the issue before the Court.[5] The basis for the decision in *Independent American* was whether to allow a general unsecured claim for attorney's fees under a matter arising under Texas law.

In the case before the Court, Triad sought secured or priority treatment for attorney's fees (paid at 100%) from its filing for relief from the stay under federal law. The chapter 13 plan provided for payment of 4% on the dollar for unsecured claims. Under the agreed order submitted by Triad, Triad was to have received 100% of its attorney's fees. Under the plan, that is the treatment provided for secured and priority creditors. The plan does not provide for 100% payment for any unsecured, non-priority creditor. Triad's claim for attorney's fees is not a priority claim under the Bankruptcy Code. Accordingly, the only potential avenue of recovery for Triad (at 100%) is § 506(b).

■ Bankruptcy Courts frequently hear issues where the basis of the decision is under state law. However, when the issue before the Bankruptcy Court is a federal law issue, federal law determines the award of attorney's fees:

*Independent American* survives.

---

**5.** In light of the opinion in *In re Pointer*, 952 F.2d 82 (5th Cir.1992), it is not clear that

State law ... is not ordinarily applied by the bankruptcy court to an action brought pursuant to 11 U.S.C. § 362(d). The Righettis' action, brought pursuant to 11 U.S.C. § 362(d), was predicated solely upon a federal statute and California state law was not applied to any of the substantive issues involved. Thus, the bankruptcy court should not have applied the state substantive law awarding attorney's fees in this case. It is true that the bankruptcy court has authority to apply either state substantive law or federal substantive law, but the choice depends on the nature of the action involved. *See, e.g., In re Sparkman,* 703 F.2d 1097, 1100 (9th Cir.1983) (because California state law governed the substantive issues involved in Sparkman's counterclaim filed in proof of claim litigation, it was appropriate to award attorney's fees under state statute); *In re Sonoma V,* 23 B.R. 789, 796 (9th Cir. BAP 1982) (when a federal bankruptcy court exercises jurisdiction over a dispute involving state law (breach of contract action), state law with respect to attorney's fees applies). When, as here, federal and not state law governed the substantive issues involved in the Righettis' motion, the bankruptcy court should not have awarded attorney's fees pursuant to a state statute.

*In re Johnson,* 756 F.2d at 741.

The Supreme Court has considered the application of § 506(b) in two major decisions. In 1989, the Court evaluated the application of § 506(b) to an oversecured claim secured by a consensual lien. The Court noted that Congress had worked on the formulation of the Bankruptcy Code for nearly a decade. *In re Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The treatment of secured creditors set forth in § 506(b) should be provided in the manner set forth in the plain language adopted by Congress.

*Id.* The second major decision was the seminal decision in *United Sav. Ass'n. of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). *Timbers* dealt directly with the issue of whether an undersecured creditor was entitled to interest on its claim. The Court held that § 506(b) has the "substantive effect of denying undersecured creditors postpetition interest on their claims." *Id.,* at 371, 108 S.Ct. 626.

Interestingly, the sentence within § 506(b) that denies interest on undersecured claims is the same sentence that denies an award of attorney's fees:

> ***To the extent that*** an allowed secured claim is secured by property, the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b).

The Court determined that—since postpetition interest was not allowable under § 506(b)—the interest would fall under the general prohibition against the allowance of unmatured interest set forth in § 502(b)(2). Inasmuch as the allowance of attorney's fees under § 506(b) is governed by the same phrase as the allowance of interest, the general prohibition against recovery of attorney's fees under the American Rule applies to bar recovery of Triad's attorney's fees. Moreover, the reference to the "unmatured interest" provision of § 502(b) is itself an exception to the general rule. Section 502(b) requires claims to be determined "as of the date of the filing of the petition." The prohibition against claims for "unmatured interest" is designed to avoid an acceleration of future interest to create a claim against the es-

tate. Inasmuch as the attorney's fee claim did not exist "as of the date of the petition," it cannot be allowed. 11 U.S.C. § 502(b).

Triad's brief urges the Court to consider a series of cases that pre-date *Timbers.* *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134 (2d Cir.1982) is the lead case cited by Triad. That case is referenced for its interpretation of § 506. However, the Court decided that case under the Bankruptcy Act. Although it looked at the newly adopted Bankruptcy Code, it stated that "[o]f course, section 506(b) of the Bankruptcy Reform Act ... does not govern this case." *Id.*[6] The other case cited by Triad is *Martin v. Bank of Germantown,* 761 F.2d 1163 (6th Cir.1985). In *Martin,* the Court excepted the debt to the Bank of Germantown from discharge, and allowed attorney's fees against the debtor—not against the Estate.

This District has previously rejected *Martin's* applicability to establish a claim against estate property for precisely the reason that allowance of a claim against the debtor on a non-discharged debt is a fundamentally different proposition than allowance of the claim against the estate. *In re Sakowitz, Inc.,* 110 B.R. 268 (Bankr. S.D.Tex.1989).

> Where the debt is non-dischargeable there is no acceptable rationale that this court is aware of to inhibit the full application of State Law as to the debt, including any provisions concerning attorney fees. The claim is not one against the general assets of the estate but only against the debtor and it is as if there is no discharge as to that particular indebtedness.

*Id.* at 275.

Indeed, the Fifth Circuit has indicated that the principal behind *Martin* is that attorney's fees are allowed against the Debtor rather than against the Estate. *In re Jordan,* 927 F.2d 221 (5th Cir.1991).

To fit within *Martin,* Triad alleges that the payments it seeks are also not from property of the estate. Triad relies on § 1327 of the Bankruptcy Code for that proposition. Triad's argument misses the mark. Although § 1327 allows the debtor to control her own property, § 1306(a)(2) provides that the debtor's post-petition earnings are property of the estate until such time as the case is "closed, dismissed, or converted to a case under chapter 7, 11 or 12...." Accordingly, although the car is vested in the Debtor upon confirmation, Triad seeks payment out of future earnings. Future earnings are property of the estate under § 1306(a)(2) and are devoted to payment of creditors under § 1322(a)(1). Of course, the automatic stay applies to Triad's enforcement of its lien on the car whether or not it revests in the Debtor. § 362(a)(5).

There are Courts that have determined—this Court believes in error—that an undersecured creditor can obtain an *unsecured* claim against the bankruptcy estate for its post-petition attorney's fees. This Court cannot reconcile those cases with § 502(b)'s requirement that claims be allowed as of the date of the petition. However, there are *no reported decisions* that accomplish what Triad seeks here. Triad seeks a secured or priority claim— paid at 100%—for attorney's fees incurred by an undersecured creditor. The chapter 13 plan provided for payment of 4% on the dollar for unsecured claims. Under the agreed order submitted by Triad, Triad was to have been paid 100%. Under the plan, that is the treatment provided for secured and priority creditors.

---

**6.** The Court is surprised that Triad's extensive description of this case fails to advise the Court that it was decided under the Bankruptcy Act.

This is an issue of great substance. Section 506(b) allows an oversecured creditor to obtain full payment of its attorney's fees *to the extent* that it is oversecured. Triad seeks to avoid the effect of § 506 by the submission of an agreed order that directly conflicts with § 506 and that has no other basis in the Bankruptcy Code. Section 1325(a)(5)(B)(ii) entitles an oversecured creditor to full payment (with interest) on its claim. Conversely, an undersecured creditor's deficiency claim is merely entitled to a *pro rata* distribution of the estate's residual. *United Sav. Ass'n. of Texas,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740. Triad offers no substantive basis in the Bankruptcy Code that provides for the payment of its attorney's fees.

### Factual Issues

Triad presented no evidence at the show cause hearing on this matter. Accordingly, the Court will rely on the matters filed of record.

In its brief, Triad claims that it may, in fact, be oversecured. The unambiguous record is to the contrary. The Debtor's confirmed plan reflects that Triad is an undersecured creditor. Triad's motion for relief from the stay alleges—albeit as an alternative basis for relief—that Triad is undersecured. Triad alleges that because this allegation is made in the alternative, it does not amount to an allegation that Triad is undersecured. Triad misreads Rule 8(e)(2) that allows pleading in the alternative:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. **All statements shall be made subject to the obligations set forth in Rule 11.**

FED.R.CIV.P. 8(e)(2) (emphasis added).

■ The Debtor's schedules reflect that Triad is undersecured. Triad's own proof of claim alleges that the value of the security is exactly equal to the amount of Triad's claim.[7] The confirmed plan provides that Triad is undersecured. Triad's motion alleges that "retail market value" of the car was $12,625.00 and that Triad is owed $13,738.88. Triad's allegation in its brief that "[t]his is not an admission that the Vehicle has no equity for purposes of 11 U.S.C. § 506(b)" is a frivolous statement. Moreover, Triad offered no evidence to the contrary at the show cause hearing. Based on the record before the Court, Triad is undersecured, and any allegations that it is oversecured have no basis in law or fact. Indeed, the Court is bound by *res judicata* to the valuation set forth in the plan. *Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987).

Triad also argues that it should be awarded attorney's fees pursuant to § 361 of the Bankruptcy Code. The Court does not understand this argument. It appears that Triad may be arguing that—because Debtor's counsel may receive a fee award from the estate—Triad should also be given a fee award. If counsel is awarded a fee, it is awarded a fee for general repre-

---

7. As Justice Scalia explains in *Timbers,* § 506(b) allows attorneys fees and interest only *to the extent* that the claim is oversecured. In accordance with Triad's proof of claim, it is oversecured to the extent of $0.00.

sentation of the Debtor. That fee will be entitled to administrative status under § 503. Section 361(3) specifically prohibits awarding a creditor fees under § 503 as a form of adequate protection. Triad's argument does not comport with the plain language of the Bankruptcy Code.

The final argument made by Triad is that United States Bankruptcy Judge Steen recently approved an order awarding attorney's fees to Chase Manhattan Mortgage on an undersecured claim. There are several problems with this argument. First, in a chapter 13 bankruptcy case, claims secured by a lien on the debtor's principal residence are entitled to receive payment of the full amount of the claim notwithstanding § 506. 11 U.S.C. § 1322(b)(2). This may explain Judge Steen's ruling.

█ Second, and more importantly, compliance with the law is the very issue with respect to Rule 9011. Each of the bankruptcy judges sitting in Houston has a caseload of approximately 5,000 cases. Each year, there are more than 12,000 motions for relief from the automatic stay. Each week, there are approximately 200 agreed orders or default orders issued on motions for relief from the stay. As a consequence of this workload, Bankruptcy Judges must be able to rely on counsel's compliance with FED. R. BANKR.P. 9011. When reviewing an agreed order, the Court should be able to rely on counsel's representation that the contents of the agreed order are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal or existing law or the establishment of new law. FED. R. BANKR.P. 9011(b)(2). Moreover, the Court should be able to rely on the representation that the factual contentions have (or are likely to have) evidentiary support. FED. R. BANKR.P. 9011(b)(3). Even if an order in another case has been incorrectly signed, that does not justify additional violations. It merely emphasizes the importance that violations of the rule be dealt with in a just manner.

### Monetary vs. Non–Monetary Sanctions

█ The Court has considered whether monetary sanctions are appropriate in this case. To be sure, this matter has taken substantial court time and monetary sanctions could be imposed to reflect the use of judicial resources and court time. Nevertheless, the Court believes that monetary sanctions need not be imposed in this case. The proposed order was an *agreed* order, and the Court believes that fact should ameliorate the sanctions to be imposed. Moreover, the Court does not believe that mild monetary sanctions would serve to protect against future violations or that this violation justifies severe monetary sanctions.

Rather than imposing monetary sanctions, the Court merely requires that Mr. Holliday discontinue practices that violate his duties under FED. R. BANK. P. 9011.

### Order

1. Effective immediately, J. Ward Holliday and all persons working in active concert with him are prohibited, directly or indirectly, from filing any pleading or proposed order in the United States Bankruptcy Court for the Southern District of Texas seeking an award of attorney's fees for a creditor that:

   A. Holds a lien on a vehicle or other personal property; and

   B. Is undersecured.

2. The Clerk of the Court shall serve a copy of this Order on each of the standing chapter 13 trustees, and on counsel to each of the standing chapter 13 trustees in the Southern District of Texas.

130

3. Daniel O'Connell, the chapter 13 trustee in this case, is made a party in interest to this order for all purposes.

4. Within 60 days of entry of this Order, J. Ward Holliday shall adopt procedures making the terms of paragraph 1 of this Order effective in all filings made by his law firm throughout the United States. Nothing in this order authorizes J. Ward Holliday to violate FED. R. BANKR.P. 9011 during the implementation period.

5. Paragraph 4 of this Order is stayed pending the outcome of any appeal to the United States District Court. If this matter is further appealed to the Fifth Circuit Court of Appeals, this stay will terminate unless otherwise ordered by the District Court.

6. The Clerk is ordered to deliver a copy of this Order to the Honorable Steven A. Felsenthal, Chief Judge of the United States Bankruptcy Court for the Northern District of Texas.